O'REILLY et al., Appellants, v. KLUENDER et al.

### Division One, February 22, 1906.

1. **MARRIED WOMAN: Legal Estate.** The owner of land devised it to a married daughter for life and the remainder to another married daughter in fee. *Held*, that the estate thus devised was a pure legal estate, and not a separate equitable estate.

2. ———: ———: **Contract: Essential Validity.** The essential element to the validity of every contract is that it is made by persons competent to contract. Where one of the parties to a contract is unable, because of coverture, to complete a transaction, the contract is unenforcible, either at law or in equity.

3. ———: ———: ———: ———: **Legal Estate: Specific Performance.** An executory contract made by a married woman in 1873 with respect to her legal estate was void and cannot now be enforced, either at law or in equity. So that where the owner of land devised a life estate therein to one daughter and the remainder in fee to another, thereby creating a pure legal estate in the latter, and the two daughters and their husbands in 1873 entered into a written contract whereby the owner of the fee and her husband authorized the life tenant and her husband to sell their interest whenever they wished to sell theirs, and agreed to accept $6,000 for such interest, and thereafter the life tenant and her husband sold the property to plaintiffs, such purchasers cannot compel specific performance of the contract against the remainderman's heirs, for her contract was void.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

AFFIRMED.

O'Reilly v. Kluender.

*Robt. L. McLaran* for appellants.

· (1)  A contract for the sale of real estate, although unilateral, may be specifically enforced.  Mastin v. Grimes, 88 Mo. 478; In re Ferguson's Estate, 124 Mo. 574; Smith v. Wilson, 160 Mo. 657.  (2)  Where one party has performed all the obligations imposed upon him by the contract, the defence of want of mutuality is not open to the other party.  Bigler v. Baker, 40 Neb. 325; Sanguinett v. Webster, 127 Mo. 32; Waterman, Specific Performance, sec. 199; 21 Am. and Eng. Ency. Law (2 Ed.), 928.  (3)  Evidence offered to show valuable improvements had been made by appellants on the property in litigation was competent and material, and the court erred in excluding it.  Barsolon v. Newton, 63 Cal. 225; Bigler v. Baker, 40 Neb. 325; Ingersoll v. Horton, 7 Mich. 405; Mason v. Wallace, Fed. Cases 9256, 4 McLean 77; Johnson v. Hurley, 115 Mo. 513; Merriam v. Goodlet, 36 Neb. 384; Pritchard v. Todd, 38 Conn. 413.

*Kehr & Tittmann* for respondents.

(1)  The contract (if assumed to be valid) is unfair and unreasonable and without mutuality of right and remedy, and therefore should not, in the exercise of a sound judicial discretion, be specifically enforced. Taylor v. Williams, 45 Mo. 83; Veth v. Gierth, 92 Mo. 97; McElroy v. Maxwell, 101 Mo. 294; Glass v. Rowe, 103 Mo. 539; Pomeroy v. Fullerton, 131 Mo. 592; Brown v. Massey, 138 Mo. 519; Hollman v. Conlon, 143 Mo. 369; Davis v. Petty, 147 Mo. 374; ⌐ailroad v. Curtis, 154 Mo. 22; Shinkle v. Vickery, 156 Mo. 15; Waterman on Specific Performance, secs. 196-7; Fry on Specific Performance, sec. 460, p. 215.  (2)  A contract made by a married woman prior to 1889, for the sale of her legal estate in land, is void and cannot be specifically enforced.  Shroyer v. Nickell, 55 Mo. 267; Walker v.

Owens, 79 Mo. 570; Gwin v. Smurr, 101 Mo. 552; Rush
v. Brown, 101 Mo. 586; Richardson v. DeGiverville,
107 Mo. 422; Brown v. Dressler, 125 Mo. 592; McRey-
nolds v. Grubb, 150 Mo. 363; Clay v. Mayer, 183 Mo.
150; Davis v. Watson, 89 Mo. App. 29.

MARSHALL, J.—This is an action for the speci-
fic performance of a contract to convey an undivided
interest in three tracts of land, aggregating one hun-
dred and three and one-half acres, in St. Louis county,
near the town of Clayton. There was a judgment for
the defendants in the trial court and the plaintiffs ap-
pealed.

The case made is this:

In 1872 Marie Echivard died in St. Louis county,
leaving surviving her two daughters, Maria Helen
Garnier, wife of Aime D. Garnier, and Armentine
Marie Kluender, wife of Frederick Kluender. She
owned an undivided interest in the land in contro-
versy, and her daughter Maria Helen Garnier owned
the other undivided interest therein. By her will Marie
Echivard devised her interest in said lands to her
daughter Maria Helen Garnier for life, with remainder
to her daughter Armentine Kluender in fee. She also
devised to her daughter, Mrs. Garnier, all of her per-
sonal property, including a leasehold on Ninth and
Olive streets in the city of St. Louis, and charged the
devises to Mrs. Garnier with the payment of four
thousand dollars, which she required Mrs. Garnier to
pay to Mrs. Kluender within one year after the death
of the testatrix, the gifts and bequests being upon the
express condition that she pay said four thousand dol-
lars to Mrs. Kluender within one year after her death,
and that amount was so paid within the time provided.

On the 3rd of December, 1873, Aime D. Garnier
and Maria Garnier, his wife, entered into an agreement
with Frederick Kluender and Armentine Kluender, his
wife, as follows:

"WhereasMarie Echivard of the city and county of St. Louis, and State of Missouri, by her last will and testament, dated the 23rd day of May, 1872, and duly proved on the 26th day of October, 1872, and now on file in the office of the clerk of the probate court of the county of St. Louis, among other bequests, gave and devised unto one of her daughters, Maria Garnier, wife of Aime D. Garnier, all and every messuages, lands, tenements and hereditaments, with appurtenances, whereof she was seized in fee, situated, lying and being in said county of St. Louis, and State of Missouri, and then occupied by said Marie Echivard, said Aime D. Garnier, and one Eugene Porcher, for the term of the natural life of said Maria Garnier, and after her decease to another daughter of testatrix, Armentine Marie Kluender, and to her heirs and assigns forever, and with the express condition that said Maria Garnier should pay to said Armentine Marie Kluender, within one year after the death of testatrix, the sum of four thousand dollars, all of which will more fully appear from said will and testament, to which reference is here made:

"And whereas said Maria Garnier has accepted the terms of said will and testament, and has paid said four thousand dollars to said Armentine Marie Kluender:

"And whereas said Maria Garnier is seized in fee of undivided interests in all said messuages, lands, tenements and hereditaments, with the appurtenances thereto belonging, and hereinafter more fully described, and she may hereafter be desirous of selling her said interests in all said messuages, lands, tenements and hereditaments, with the appurtenances thereto belonging, and said Armentine Marie Kluender is desirous of facilitating such sale, so that said Maria Garnier may realize as large a sum as possible;

"Now, therefore, this agreement, made and entered into this third day of December, 1873, by and between Aime D. Garnier and said Maria Garnier, wife of

said Aime D., and Frederick Kluender and said Armentine Marie Kluender, wife of said Frederick, as follows, viz.:

"That in consideration of the premises and the further consideration of the sum of one dollar paid to said Frederick and Armentine Marie Kluender by said Aime D. and Maria Garnier, the receipt whereof is hereby acknowledged, they, the said Frederick and Armentine Marie Kluender for themselves and for each of them and their respective heirs, assigns, executors and administrators and said Frederick Kluender especially for and on behalf of his said wife Armentine Marie, do agree, bargain and covenant with said Aime D. and Maria Garnier and with each of them and their respective heirs, assigns, executors and administrators and said Aime D. Garnier especially for and on behalf of his said wife Maria that whenever said Maria Garnier shall sell all the interests she has or may have by virtue of the bequest made to her in said last will and testament of said Marie Echivard as herein above stated and all the interests she has or may have in fee or otherwise in all said messuages, lands, tenements and hereditaments with the appurtenances thereto belonging and more fully hereinafter described to any person or persons whatsoever, and said Armentine Marie and her husband, Frederick Kluender, shall also join in such sale and shall execute, sign, seal, acknowledge and deliver any and all necessary deeds and instruments with a covenant of special warranty for the sale of all the interest they and each one of them have or may have acquired in said messuages, lands, tenements and hereditaments with the appurtenances thereto belonging by virtue of said last will and testament of said Marie Echivard as aforesaid to any such person or persons buying the said interests of said Maria and Aime D. Garnier and said Armentine Marie and Frederick Kluender—whereupon said Maria Garnier or her husband, Aime D. Garnier, shall place and invest the sum

of six thousand dollars in United States bonds or in good and sufficient real estate for the benefit and behoof of said Maria Garnier during her lifetime and for her during her lifetime to enjoy the use, possession, profits, interests and rents derived and coming from such investment, and at her death to revert to and become the property and interest of said Armentine Marie Kluender, her heirs and assigns forever.

"The said six thousand dollars is the value agreed upon by all the parties hereto of the messuages, lands, tenements and hereditaments, with the appurtenances thereto belonging which the said Marie Echivard gave and devised by will as aforesaid to said Maria Garnier for her life with remainder in fee to said Armentine Marie Kluender and are described as follows to-wit: . . . . .

"In witness whereof all the parties hereunto have set their hands and seals on this third day of December, 1873, at the city and county of St. Louis and State of Missouri.

| | |
|---|---|
| "AIME D. GARNIER, | (Seal.) |
| MARIA GARNIER, | (Seal.) |
| FREDERICK KLUENDER, | (Seal.) |
| ARMENTINE M. KLUENDER, | (Seal.)" |

Said agreement was acknowledged on the 4th day of December, 1873, and recorded in the recorder's office of St. Louis county on the 19th of December, 1873.

Armentine Marie Kluender died on January 9, 1874, leaving surviving her her husband Frederick Kluender and seven children. On the 29th of September, 1899, Frederick Kluender died, and this action is against the children of Marie Kluender. On the 8th of July, 1889, Aime D. Garnier and his wife Maria conveyed to Michael B. O'Reilly and Mary C. O'Reilly, his wife, the land aforesaid, and at the same time assigned to them the contract aforesaid between Garnier and wife and Kluender and wife, the assignment being as follows:

"For and in consideration of an annuity of three hundred dollars per annum secured to Maria Garnier, we, the undersigned, Aime D. Garnier and Maria his wife, do hereby assign and set over to M. B. O'Reilly and Mary C., his wife, all rights, interests and benefits and all advantages accruing under the within contract."

The conveyance from Garnier and wife to O'Reilly and wife recited a consideration of $10,000. The plaintiff Michael B. O'Reilly testified, however, that he retained, and has ever since retained, of that purchase price, the sum of $6,000, being the amount specified in the contract as the amount which should be invested for the benefit of Mrs. Kluender, and that he was to apply that amount to said claim "whenever I wish to apply it." He further testified that he had paid Mrs. Garnier the annuity of three hundred dollars per annum, being 5 per cent of six thousand dollars specified in the assignment of the contract to him.

The petition charged that the plaintiff had made improvements on the property, of the value of one thousand dollars, and that Mrs. Garnier, while in possession and after the execution of the contract, made improvements thereon of the value of five thousand dollars.

Upon the trial the court, on the objection of the defendants, excluded the evidence offered tending to prove the making of such improvements and the plaintiff excepted to the ruling, and now assigns it as error.

The witness testified further that no demand had been made upon him to invest the six thousand dollars as provided by the contract. This was all the evidence in the case.

## I.

At the outset the validity of the contract here sought to be specifically enforced presents itself for adjudication. Upon the death of Mrs. Echivard her undivided interest in the land passed, under her will,

to her daughter, Mrs. Garnier, for life, with remainder in fee to her other daughter, Mrs. Kluender. Both were married women at that time. The estate thus devised was a pure legal estate and not a separate equitable estate. At the date of the contract set out, on the 3rd of December, 1873, between Mr. and Mrs. Garnier and Mr. and Mrs. Kluender, Mrs. Garnier and Mrs. Kluender were both under coverture. Without analyzing the true meaning of that contract or stopping to consider whether or not it was based upon a valuable consideration, moving to Mrs. Kluender, and treating the contract as otherwise a valid contract, the question here is whether it was binding upon Mrs. Kluender, by reason of the fact that she was at that time under coverture and that it related to an estate the legal title to which was in her, and acquired by her between 1866 and 1889.

One of the essential elements to the validity of every contract is, that it is made by persons competent to contract. The general rule of law is that where one of the parties to a contract is unable, because of coverture, to complete a transaction, the contract is invalid and unenforcible, either at law or in equity. [21 Am. and Eng. Ency. Law (2 Ed.), 925.]

The rule has long obtained in this State that prior to 1889 a contract made by a woman under coverture with respect to her mere legal estate is void and cannot be enforced either at law or in equity.

Gwin v. Smurr, 101 Mo. l. c. 552, was a bill for the specific performance of an alleged contract for the conveyance of land held by a wife, in fee, and other relief. The trial court dismissed the bill, and upon appeal the judgment was affirmed by this court. SHERWOOD, J., speaking for the court, said: "The title of the wife was under the Married Woman's act (R. S. 1879, sec. 3295), having been derived after 1866, and there being no words employed either in her father's will, or in the decree of partition, which created in her an equitable,

separate estate. In consequence of which, her executory contract to convey the land, though executed and acknowledged jointly with her husband, was wholly worthless; as a court of equity would not compel specific performance of such an instrument. [State v. Clay, 100 Mo. 571.] The only way the land of the wife held by the tenure of the act aforesaid can be charged, affected or conveyed, is by the joint deed of the husband and wife. [Craig v. Van Bebber, 100 Mo. 584, and cases cited.] The court did right, therefore, in dismissing the petition when the above facts appeared in evidence; because in contemplation of law there was no contract in existence on which to base a decree for specific performance.'' There is no difference between that case and the case at bar.

Warren v. Castello, 109 Mo. 338, is stated in the opinion to have been a proceeding commenced in the probate court of St. Louis county, seeking specific performance of an agreement alleged to have been made between the plaintiff, Mary J. Warren, a married woman, and William Mreen. The alleged agreement was contained in a lease from Mreen to Mrs. Warren, and expressly stipulated that she was not obligated to make the purchase, but had the option so to do within a specified time. It was held that Mrs. Warren could not maintain an action, for the reason that the contract lacked mutuality of obligation and of remedy, in that, as Mrs. Warren was a married woman, she was incompetent to contract for the purchase of land. Speaking to the validity of the contract the court quoted the rule laid down in Bishop on Married Women, vol. 2, sec. 250, as follows: ''But if an agreement rests merely in mutual promises, then in principle, as the promise of a married woman is a nullity, it cannot constitute a consideration for the promise of the other party; therefore, it is void also as to him. This is the true ground on which proceeds a North Carolina case of mutual promises, followed by a tender on the part of the mar-

ried woman, wherein it was held that upon the facts she could not have a decree of specific performance against the defendant who had agreed to convey some property to her separate use.''

The question came before this court in Brown v. Dressler, 125 Mo. 589. That was a bill in equity by a married woman and her husband for the cancellation of a mortgage upon the wife's legal estate executed by the wife without the husband joining therein. After pointing out that the land was a pure legal estate and that it did not belong to her before her marriage, had not come to her by purchase with her separate money, or by gift, bequest or inheritance during coverture, after the taking effect of the Married Woman's act of 1889, and treating it as simply a common law, legal estate in the wife, this court, per BRACE, J., said: ''The power of a married woman to convey her real estate held as at common law is conferred by statute. It is not conferred upon the wife alone, but upon the husband and wife jointly, and then only by a deed executed by them and acknowledged and certified in the manner required by the statute. [R. S. 1889, sec. 2396.] The law in this respect is substantially the same now as it has always been. No material change has been made in that law since the organization of the State. It is beyond question that prior to 1889 a married woman in this State could not convey her legal estate in lands, except by deed in which her husband joined, executed and acknowledged in accordance with the requirements of the statute, nor could she make a valid contract for the sale of such estate, or bind the same in law or in equity by any contract of hers.'' [Citing cases.] The court then pointed out the changes made in the Married Woman's act of 1889, which are not involved here.

The statute in force at the date of the execution of the contract here sought to be enforced was section 2, page 444 of the General Statutes of 1865, which was as follows: ''A husband and wife may convey the real

O'Reilly v. Kluender.

estate of the wife, and the wife may relinquish her dower in the real estate of her husband, by their joint deed, acknowledged and certified as herein provided; but no covenant expressed or implied in such deed shall bind the wife or the heirs, except so far as may be necessary effectually to convey from her and her heirs, all her right, title and interest expressed to be conveyed therein."

Though the instrument here sought to be enforced was in writing and executed and acknowledged by the married woman and her husband, nevertheless it was not a deed, but simply an executory contract, and as such was absolutely void as to the married woman and was not binding upon her or her heirs, and cannot be enforced in either a court of law or a court of equity. The distinction between the power of a married woman to contract with reference to her legal estate before and after the Married Woman's act of 1889, was further pointed out by this court in McReynolds v. Grubb, 150 Mo. l. c. 363, and Clay v. Mayer, 183 Mo. l. c. 156.

It follows that the contract here sought to be specifically enforced was void as to Mrs. Kluender and as to her heirs.

This conclusion makes it unnecessary to consider the other points so learnedly discussed by counsel.

The judgment of the circuit court was right and is affirmed.

All concur.