2001 OK CIV APP 64

**Bertha Z. DORN,**
**Plaintiff/Appellant/Counter–Appellee,**

v.

**HERITAGE TRUST COMPANY, Trustee of the Ralph H. Dorn Trust, Defendant/Appellee/Counter–Appellant.**

No. 93,448.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 27, 2001.

Donelle H. Ratheal, Ratheal & Campbell, Oklahoma City, OK, for Plaintiff/Appellant/Counter–Appellee.

Laura Haag McConnell, Byron K. Linkous, Hartzog Conger & Cason, Oklahoma City, OK, for Defendant/Appellee/Counter–Appellant.

## OPINION

ADAMS, Presiding Judge:

¶ 1 After the Decree of Divorce was filed dissolving the fifty-three year marriage of Bertha Z. Dorn (Wife) and Ralph Dorn (Husband), Wife filed this appeal, alleging error in the trial court's determination, valuation and division of marital property and its retroactive modification of her temporary support alimony. In his counter-appeal from the same decree, Husband alleges only that Wife's long-term care insurance proceeds should have been treated as marital property.[1]

¶ 2 Our standard of review for the issues raised in both appeals requires us to review all of the evidence presented to the trial court and allows us to disturb the trial court's decision only if that decision is clearly against the weight of the evidence or an

---

**1.** While this appeal was pending, Husband died. After the appellate briefs were filed, Heritage Trust Company, the trustee of Husband's Trust, was substituted as a party in his stead.

abuse of discretion. *Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500. Because a divorce is an action of equitable cognizance, the trial court is vested with wide discretion in dividing the property. *Dixon v. Dixon*, 1996 OK CIV APP 61, 919 P.2d 28. Applying that standard, we must review the record for any abuse of discretion and determine if the findings of the trial court are supported by the evidence.

## FACTS

¶ 3 Husband was hospitalized and in need of short-term medical care due to an amputation of his leg when he requested Sandy, one of two adult daughters born during the parties' marriage, to search for his disability insurance policy at home. While looking for the policy, Sandy discovered what she believed was evidence of her father's mismanagement as trustee of a trust created by his parents for which he was the income beneficiary and his two daughters were contingent beneficiaries. Sandy told her mother about her findings, and in September of 1995, Wife filed a separate maintenance action and an application for a temporary order requesting, *inter alia*, support alimony from Husband.

¶ 4 Husband denied Wife's need for support in his combined answer and cross-petition for divorce. Upon hearing Wife's application, the trial court determined that each party had sufficient liquid assets in their separate, revocable trusts for their monthly expenses, authorized each to liquidate and expend trust assets worth up to $3,000 per month, if needed, and ordered Husband to continue payment of the parties' health, home, and automobile insurance. Because Wife and Sandy planned to live together in a home being built with funds generated from the sale of assets Wife had withdrawn from her trust at the time of separation, the trial court awarded Husband the parties' handicap-equipped condominium and van.

¶ 5 A year later, Sandy and her sister filed separate actions against Husband, as Trustee of several trusts, alleging he had misappropriated trust funds. Judgment was ultimately entered in favor of the two daughters, and Husband appealed that decision.

¶ 6 At a hearing which occurred some three and one-half years after this action was filed, the trial court announced its decisions on two legal issues that had been submitted by the parties' briefs. The trial court concluded that the assets in the parties' respective revocable trusts should be treated as marital property and determined the dates upon which to value those and the other assets in the marital estate. The trial court also determined that the short-term/long-term care insurance policies (hereinafter, disability policies) purchased during the parties' marriage and issued in their individual names would be set aside as the separate property of the spouse covered by each respective policy. The trial court also announced that any funds recovered from Husband's trust as a result of the daughters' judgment would be deducted from that trust before determining the size of the marital estate and making a division.[2]

¶ 7 Thereafter, the parties filed additional briefs, attaching evidentiary material to support their arguments concerning property division and support alimony issues. Because both parties were too frail to withstand the stress of a trial, counsel for the parties agreed to submit "trial briefs and proffered exhibits" to the trial court for its decision on the remaining issues.[3]

---

2. According to the trial court, "[i]f the appellate court agrees that the daughters' trust funds were improperly placed in Husband's trust, then those funds would be treated as if they were never there, as if they were returned under the other district court order ... so they will not be before this Court for division between these parties." One of Wife's subsequent trial briefs attached a copy of the opinion by another division of this Court rendered in Husband's appeal from the daughters' judgment which affirmed Husband's removal as trustee but limited the daughters' judgment to $71,548.77, plus interest.

3. Both parties admit in their appellate briefs that they agreed to dispense with a trial due to the parties' advanced age and poor health. Our review is based upon the exhibits attached to those briefs, including depositions given by Husband and Wife, which, although not formally admitted, were apparently treated by the trial court and the parties as being in evidence. *See Enochs v. Martin Properties Inc.*, 1997 OK 132, 954 P.2d 124. We also accept as material supplementing the record the mutual admissions in the parties' appellate briefs. *Deffenbaugh v. Hudson*, 1990 OK 37, 791 P.2d 84.

¶ 8 On July 2, 1999, the trial court filed a Decree of Divorce with an attached "Marital Balance Sheet," which dissolved the parties' marriage based on incompatibility, set aside as separate property certain gifts of jewelry and inherited real and personal property to each party, denied Wife support alimony, set values on the marital property, and divided the marital property equally between the parties. In doing so, the trial court ordered real estate located in the Bricktown area of Oklahoma City, Oklahoma (the Bricktown Property) sold, with the net proceeds to be divided equally between the parties, gave Husband a credit for $11,275 which he had paid as temporary support alimony while the action was pending, and awarded Wife $32,129 alimony in lieu of property in order to equalize the property division.[4] Twenty-eight days later, Wife filed a Motion to Reconsider in the trial court and a Petition in Error. Husband filed a timely counter-appeal. The trial court denied Wife's Motion to Reconsider approximately nine months later.

### ANALYSIS

¶ 9 As a preliminary matter, we must first address Husband's motion to dismiss Wife's appeal, which was deferred for decision until now by the Oklahoma Supreme Court. According to Husband, Wife's Motion to Reconsider must be treated as a motion for new trial, and because she did not raise any of the errors argued in this appeal in that motion, she has not preserved any error for review, citing 12 O.S.1991 § 991(b).[5] However, even if we were to conclude that Wife's motion must be considered a "motion for new trial," we do not agree that § 991(b)

would limit her arguments on appeal to those grounds asserted in her motion.

¶ 10 Automatic application of the restrictions imposed in § 991(b) to new trial motions filed more than ten days after judgment ignores the provisions of § 991(a).[6] Those provisions clearly contemplate a motion for new trial *that extends the time to file an appeal until the motion has been decided by the trial court.* Wife's "Motion to Reconsider," filed 28 days *after* the filing of the Decree of Divorce, was the functional equivalent of a "term-time motion to vacate" which did *not* extend her appeal time and, pursuant to 12 O.S.1991 § 1031.1, did not need to be based on any statutory ground. *See Schepp v. Hess,* 1989 OK 28, 770 P.2d 34. Husband's motion to dismiss Wife's Petition in Error is denied.

### WIFE'S APPEAL

¶ 11 In her first proposition, Wife argues that the jointly acquired property she and Husband transferred to her revocable trust by quitclaim deed became her separate property and is not subject to equitable division. She argues *Manhart v. Manhart,* 1986 OK 12, 725 P.2d 1234, held that the presumption for jointly acquired property is prima facie only and may be overcome by the evidence and recognized that 32 O.S.1981 §§ 5 and 6 (now 43 O.S.1991 §§ 204 and 205) allow inter-spousal conveyances to remove jointly acquired property from the marital estate. According to Wife, the transfers to "the parties' respective trusts rebut the presumption of joint property." She also argues, relying upon *Limb v. Aldridge,* 1999 OK CIV APP

---

4. The value given to the total marital estate is $1,073,433. The trial court valued the Bricktown property at $400,000, assigned half that value to each party, but ordered it sold with the costs and profits to be shared equally. In addition, Husband received their condominium, his van, a life insurance policy, jewelry, and stocks, for a total of $563,213, and Wife received some real estate in Oklahoma and Florida, her car, a life insurance policy, jewelry, a mutual fund, stocks, and certificate of deposit proceeds, for a total of $498,955.

5. Section 991(b) provides that "[i]f a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations

of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted."

6. This subsection reads, in pertinent part:

The right of a party to perfect an appeal from a judgment, order or decree of the trial court to the Supreme Court shall not be conditioned upon his having filed in the trial court a motion for a new trial, *but in the event a motion for a new trial is filed in the trial court by a party adversely affected by the judgment, order or decree, no appeal to the Supreme Court may be taken until subsequent to the ruling by the trial court on the motion for a new trial.* (Emphasis added).

31, 978 P.2d 365, that her designation of a contingent trust beneficiary other than herself, considered with the quitclaim deed, makes Husband's "illusory trust" argument moot.

¶ 12 *Limb* does not concern the determination of marital property in the context of a divorce, and therefore is inapplicable to this case. Nor do we need consider Wife's argument that the parties' quitclaim deed was based on mutual consent, because even if we were to decide that question in her favor, which we do not, her appellate argument would still fail based on our interpretation of *Manhart*.

¶ 13 *Manhart* first determined that the trial court's conclusion-the conveyance of the wife's interest in certain oil properties and common stock to the husband "occurring after their final separation" was bona fide, *i.e.*, free from fraud, undue influence and coercion [7]—was not clearly contrary to the weight of the evidence. After approving the wife's assertion that the mere vesting of complete title in a spouse does not remove jointly acquired property from the ambit of 12 O.S. 1981 § 1278 (now 43 O.S.Supp.1992 § 121) [8] and discussing the statute's interpretation and the presumption for jointly acquired property, *Manhart* distinguished prior "inter-spousal conveyance" cases all holding that the property was jointly acquired, stating, "[t]hese cases are clearly distinguishable from the case at bar; in each the spouses continued marital relations for a significant period after the transfer." 1986 OK 12, ¶ 39, 725 P.2d at 1240.

¶ 14 Immediately following that statement, *Manhart* explained:

It is our belief that the *better-reasoned rule* is that 32 O.S.1981 §§ 5 and 6 [now 43 O.S.1991 §§ 204 and 205], in allowing a spouse to convey his or her interest in property to the other and alter the legal relationship as to property, can remove jointly acquired property from the marital estate. *Whether the property remains the separate property of the spouse to whom it was conveyed, depends on how the spouses treat the property. If they jointly use and manage the property, then it may be considered "jointly acquired." The controlling facts in such cases are the time of the conveyance in relation to the separation of the spouses, and the completeness of their separation, especially in regard to their dealings concerning the conveyed property.* (Citation omitted; emphasis added.) 1986 OK 12, ¶ 40, 725 P.2d at 1240.

¶ 15 Wife's argument ignores a distinguishing fact between *Manhart* and this case that the *Manhart* Court described as "controlling" on the question of whether the property conveyed to the other spouse would remain his or her separate property. In *Manhart*, the conveyance from the wife to the husband occurred *after* their final separation. In this case, it is undisputed that Husband and Wife were *not separated nor had they even planned to separate or divorce* when they executed the joint quitclaim deed in favor of Wife's trust. As did the couples in the interspousal conveyance cases distinguished by *Manhart*, Husband and Wife continued their marital relations for over 4 years after the creation of the trust in 1991 and 3 years after the execution of the joint quitclaim deed, both of them living together in their condominium until their separation in 1995. Further, Husband testified by deposition that the two trusts were created for estate planning purposes in order to minimize federal estate tax.

¶ 16 There is also additional evidence in this record supporting "joint use and management" of the trust assets. Wife's trust, as amended in 1994, named Husband as a trust beneficiary. Husband stated in his deposition that he and Wife were both receiving

---

7. The parties have not raised any allegations of this nature in this case.

8. In pertinent part, 43 O.S.Supp.1992 § 121 provides: "As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, *whether the title thereto be in either or both of said parties,* the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof." (Emphasis added).

income from the lease of the Bricktown Property prior to the filing of Wife's separate maintenance petition and that "everything we had we considered joint." Moreover, when Wife amended her trust in 1994, she designated Husband as co-trustee in place of the bank originally named. The trial court's decision that the trust property did not remain separate property is not clearly against the weight of the evidence.

■ ¶ 17 In her second proposition, Wife argues the trial court erred by valuing the parties' condominium and the Bricktown Property as of the first trial date, while valuing all other marital property on the date of separation.[9] Wife acknowledges the trial court's discretion to value each marital asset separately, but argues that "the trial court does not have unbridled discretion," relying on *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, as authority that the date for valuation must be reasonable and have a logical connection to the circumstances.

¶ 18 According to Wife, *Thielenhaus* "held that an increase or decrease that is outside the control of the parties is not a divisible marital asset if it is earned or lost during a period when the parties are not operating as an economic unit." Both parties admitted the Bricktown Property's location, abutting the canal, caused its substantial increase in value between the two dates, not their joint efforts. Therefore, Wife argues, *Thielenhaus* required the trial court to use the date of separation as the temporal point for determining the property's value as part of the marital estate. Wife says *Favell v. Favell*, 1998 OK CIV APP 22, 957 P.2d 556, confirms her position.

¶ 19 Wife has misinterpreted both cases. The language in *Thielenhaus* upon which Wife relies refers only to cases in which a spouse brings *separate* property to the marriage that subsequently increases in value due to circumstances *unrelated* to the efforts

of either spouse, not to jointly acquired property that has increased in value under identical circumstances. Furthermore, the jointly acquired business in *Favell* increased in value between the date of the trial court's temporary order and the trial date nearly 4 years later *due to the efforts of both parties* who were corporate officers during that period. *Favell* held that the trial court's valuation of the business on the earlier date was reversible error because, by doing so, the trial court awarded "the entire increase in corporate value produced through the efforts of [the husband] and [the wife] as corporate officers to [the wife] without any corresponding compensation to [the husband]." 1998 OK CIV APP 22, ¶ 24, 957 P.2d at 562.

¶ 20 Neither *Thielenhaus* or *Favell* stand for the proposition that appreciation of jointly acquired property that is outside the parties' control is *never* a divisible marital asset. Instead, the *Thielenhaus* Court's requirement that the cut-off date of *each marital asset* "suit the circumstances of a case" and that the trial court should "set a reasonable temporal point for valuing each marital asset, making proper allowances for different types of conjugal property" clearly gives the trial court broad discretion in making that decision. 1995 OK 5, ¶ 16, 890 P.2d at 933. Wife has not demonstrated any abuse of discretion with the trial court's decision to value the properties with the appreciation included and divide that amount equally between the parties.[10]

■ ¶ 21 In her third proposition, Wife argues, for a variety of reasons, that the trial court's valuation and division of the marital property was against the clear weight of the evidence. The first such error she identifies was the trial court's alleged inclusion of the values of her wedding ring and fur coat in determining the value of the marital estate after the trial court found they were gifts

9. The difference in the valuation of their condominium between those two dates is unknown but the parties both admit in their briefs that the value of the Bricktown property increased by $200,000.

10. Because the trial court ordered the property in question sold and the net proceeds divided

equally between Husband and Wife (a decision we ultimately affirm in this opinion), we are unable to determine how the value set on that property by the trial court was of any ultimate significance. The value of this asset to the parties will be determined by the market.

and Wife's separate property. Wife bases this argument on her conclusion that the trial court must have included those items in setting the value of the jewelry that made up part of the marital estate because, otherwise according to Wife, the trial court's assigned value has no support in the evidence.

¶ 22 Considering all of the evidence presented on the values and existence of the various items of jewelry and the fur coat, we must conclude the trial court could properly have found the total value of the jewelry and furs included in the marital estate, and not including Wife's wedding ring and the fur coat in question, to be the amount in the "Marital Balance Sheet" attached to the decree. Wife has not demonstrated that the trial court's valuation and division of the marital jewelry improperly included the values for her separate properties.

■ ¶ 23 Under this same proposition, Wife argues the trial court's award of the "Sulphur [Oklahoma] and Florida properties" to her was inequitable because Husband had received but never forwarded the tax invoices, thereby burdening both vacation properties with past due property tax penalties and lowering their values. However, Wife has not demonstrated by any evidence in this record that the property values were lowered or that the values reflected in the trial court's award did not take into account any impact of tax delinquencies.

■ ¶ 24 Finally, under her third proposition, Wife argues that the trial court's order to sell the Bricktown Property and divide the net proceeds equally was inequitable. Wife asked the trial court to award her the Bricktown Property and give Husband a lien to protect his equitable interest and says that proposal was more equitable than the course chosen by the trial court.

¶ 25 In so arguing, Wife contends that the trial court failed to take into consideration the parties' positions and motives regarding the property, *i.e.*, her participation in the development of that area and sentimental attachment to the building. However, she has cited no authority which required the trial court to give controlling force to those considerations. She also argues that the sale of the property will subject virtually all of the proceeds to capital gains taxation, whereas a transfer to her would allow the property to pass through her estate with a stepped-up basis, allowing her heirs to avoid any capital gains tax for gains in the property's value between the time of its purchase and her death. We acknowledge that the beneficiaries of Wife's potential estate, and perhaps those of Husband's, might receive a greater benefit under the choice proposed by Wife. However, that choice would also have deprived Husband of the opportunity to reap any financial gain from a joint asset during his lifetime. We cannot say that the trial court's decision to have the property sold was an abuse of discretion or clearly against the weight of the evidence.

■ ¶ 26 In her final proposition, Wife argues that the credit awarded to Husband, as part of the final property division, for the temporary support alimony he paid during the pendency of this case was an improper retroactive modification of temporary support alimony and was against the clear weight of the evidence. Wife acknowledges the trial court's authority under 43 O.S.Supp. 1997 § 110 to modify or vacate temporary orders until the entry of the final decree, but she contends that the fact that she does not work distinguishes this case from *Gray v. Gray*, 1996 OK 84, 922 P.2d 615.

¶ 27 That fact does make the circumstances different than those confronted in *Gray*, which allowed a trial court to credit the payee spouse's marital property with the amount of support alimony received during the pending divorce where the trial court later finds the payee did not need that support. However, that difference is not significant in applying the principle involved.

■ ¶ 28 The needs of the payee spouse and the ability of the other spouse to pay remain the principal factors in determining payment of support alimony. *Wood v. Wood*, 1990 OK CIV APP 49, 793 P.2d 1372. Wife requested $500 in support alimony to compensate her for lost Social Security benefits due to Husband's failure to recognize her work at their business for thirty years, pay Social Security taxes, and cover her Medicaid

supplemental insurance and submitted a trial exhibit demonstrating that Wife's monthly expenses exceeded her monthly income by $629.

¶ 29 The record contains no evidence that the amount of Social Security she now receives would have been higher if Husband treated her as an employee and paid the appropriate taxes. Moreover, Wife's exhibit of her monthly income and expenses did not include the $563.92 monthly payment due on a $90,000 promissory note from Sandy, the parties' youngest daughter, to repay a loan Wife extended to her after the parties' separation or the $600 net monthly income from the Bricktown Property lease.

¶ 30 There was also evidence of large monetary gifts from Wife to the same daughter during the litigation from which the trial court could reasonably conclude that if Wife had instead invested the money, she would have had sufficient income to pay her monthly expenses. The trial court's decision that Wife did not need temporary support alimony and its decision to credit Husband with the amount he paid is not clearly against the weight of the evidence, and Wife has not demonstrated an abuse of discretion.

## HUSBAND'S COUNTER APPEAL

¶ 31 In his single proposition, Husband claims the trial court erred by determining that Wife's disability income, which she received as a benefit under insurance policies purchased with marital funds, is her separate property. The trial court did so based upon "the circumstances surrounding the purchase, specifically when the parties purchased the policies" and concluded "that the nature of the policy at the time of the purchase was income replacement and not for retirement."

¶ 32 Husband argues the proceeds from Wife's disability policy,[11] payment of which commenced after the parties separated due to a medical condition requiring Wife to reside in an assisted living facility for the remainder of her life, should be included in the

marital estate because the policy was purchased and premiums were paid during the marriage with joint funds. Relying on *Christmas v. Christmas*, 1990 OK 16, 787 P.2d 1267, Husband claims he and Wife purchased their disability policies in order to avoid using their retirement savings to pay for long term health care.

¶ 33 *Christmas* involved a disability policy that was part of the husband's compensation as a municipal firefighter. Under its facts, the husband and wife separated, the husband was hospitalized for three months and after filing for disability benefits claiming job stress, the husband was awarded "disability in the line of duty" benefits. To resolve the issue of first impression, "whether disability benefits received after divorce are joint property subject to equitable division in a divorce action," the *Christmas* Court followed what it termed "replacement analysis," to explain the difference between disability benefits and retirement pensions:

All wage continuation plans are deferred compensation and function as insurance. *Retirement pensions* insure against superannuation, survival beyond retirement age. They function as a substitute for life savings. If a worker was not provided retirement coverage, the additional wages received would presumably be saved for superannuation. These savings, earned during the marriage, would unquestionably constitute joint property. *Disability benefits*, on the other hand, do not substitute for savings. Rather, they insure against loss of wages from disability before superannuation. Disability benefits received after divorce replace post-coverture wages that would be the earner's separate property. Thus, *while retirement pensions replace joint property, disability benefits replace separate property.* This difference in the replacement nature of the benefits requires that disability benefits be classified as the disabled worker's separate property. (Emphasis added). 1990 OK 16, ¶ 7–8, 787 P.2d at 1268.

11. At the time of trial, the policy was paying $1675 per month for Wife's living expenses and care at the facility. Based thereon, Husband submitted a trial exhibit calculating the actuarial value of Wife's policy to be $192,625 ($1675 × 115 months [Wife's life expectancy based on I.R.C. § 72]).

¶ 34 After noting the wife's reliance on case law holding that, absent a specific statutory exemption, retirement pensions are jointly acquired, the *Christmas* Court explained:

> Applying replacement analysis to the facts of this case, the nature of husband's benefits determines the classification, not the fact the benefits are termed a "disability pension" in title 11 ... The benefits awarded to husband replace the wages he would receive but for his disability. Therefore, these earnings received after divorce are his separate property. 1990 OK 16, ¶ 10, 787 P.2d at 1268.

¶ 35 Unlike *Christmas*, there is no dispute in this case that the proceeds Husband seeks to include in the marital estate are not "pension benefits," but instead "disability benefits" received after separation, the nature of which determines the classification as joint or separate property. The record reveals that the disability policies were purchased at least 10 years before retirement and that the benefits, such as Wife receives, are triggered only if the insured is diagnosed with a permanent medical condition requiring long term care of that person. Other evidence regarding the nature of the parties' disability policies may be gleaned from Husband's admission in his appellate brief that he must continue to pay premiums for his disability policy to have benefits and that he had the policy "in the event he should need it at some time in the future."[12]

¶ 36 As the evidence demonstrates, Husband's argument that they purchased their disability policies to avoid spending their retirement savings fails to consider that if Wife had become disabled *prior* to retirement age, as occurred in *Christmas*, the disability benefits she would have received under the same policy would have replaced any wages she would have received but for her disability. We find no language in *Christmas* that would indicate that the nature of disability benefits changes depending on the timing of one's disability. On this record, we must conclude the trial court's treatment of these benefits

as Wife's separate property was neither clearly against the weight of the evidence nor an abuse of discretion.

## CONCLUSION

¶ 37 Neither Wife nor Husband has demonstrated that the trial court's decisions in determining the content of the marital estate and dividing that estate were an abuse of discretion or clearly contrary to the weight of the evidence. Accordingly, the trial court's judgment is affirmed.

¶ 38 AFFIRMED

¶ 39 JONES, J., and JOPLIN, J., concur.

---

12. He also testified during his deposition that there are no death/survivor benefits or cash surrender values which might make these policies similar to life insurance policies having a present value.