2009 OK CIV APP 49

**In re the Marriage of Ted Leon KING, Petitioner/Appellant,**

v.

**Margaret Raye KING, Respondent/Appellee.**

No. 105,023.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 16, 2009.

Richard L. Yohn, the Yohn Law Offices, Miami, Oklahoma, for Petitioner/Appellant.

Kristi K. Sanders, Bartlesville, Oklahoma, for Respondent/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Petitioner, Ted Leon King (Husband), appeals the trial court's determination that certain realty and oil and gas leases were separate property not subject to distribution in his divorce action against Respondent, Margaret Raye King (Wife). We affirm.

## BACKGROUND

¶ 2 Husband and Wife were married in 1966. During their marriage, they acquired more than 300 acres of real property and two oil and gas leases. In October 2000, Husband learned he had fathered a 16–year–old child out of wedlock by another woman, that a default judgment had been entered against him in a Kansas paternity action, and that he owed $300,000 in child support. In January 2001, after consulting with his attorney, Husband conveyed the realty to Wife. In June 2001, he conveyed the oil and gas leases to Wife. Thereafter, he was served in a child support collection action in Nowata County, Oklahoma.

¶ 3 The Nowata County collection proceeding resulted in protracted litigation primarily involving whether Husband fraudulently conveyed the properties to Wife for the purpose of defeating his judgment creditor. The trial court granted summary judgment against Husband on the grounds that he had done so.

On appeal in Case No. 100,723, we affirmed in part, reversed in part, and remanded, finding that a substantial factual dispute existed which mandated a trial. After remand, the parties settled the matter.

¶ 4 Although Husband and Wife continued living together, their relationship deteriorated. After one separation, Wife filed for divorce in September 2005. She dismissed the case a few weeks later. The parties separated again and Husband filed the present divorce action on January 5, 2006. Husband also filed a motion seeking a determination that the realty and leases were still marital property.

¶ 5 Husband's motion was heard in December 2006. Both parties appeared and agreed that the issue could be determined based upon oral arguments, pleadings, and the affidavits, exhibits, and testimony originally prepared for the Nowata County collection case.[1] Both parties agreed that these items could be admitted into evidence and reviewed by the court. On January 3, 2007, after taking the matter under advisement, the trial court filed a "Decision," finding as follows:

3. That the Petitioner acknowledged, by affidavit dated December 31, 2003, that he made the conveyances to the Respondent for the following reason:

"I believe that she [Wife] was deserving of all of my properties because of the financial contribution she made to the properties. It was also an agreement reached between us in case we decided to get a divorce. I gave her the real estate and other properties as compensation for our marriage and as an apology for what I had done."

4. That Carl Gibson, attorney for the parties, stated by affidavit dated January 4, 2004, that it was Mr. King's (Petitioner's) desire to simply convey to Mrs. King (Respondent) his interest in their real property, which comprised the marital estate.

5. That there was a representation made by the Petitioner that some amount of the revenue derived from the oil and gas properties conveyed to Respondent was shared by her with Petitioner. This representa-

tion was not denied by Respondent, though she contends the amount shared was very small. No explanation of why the revenue was shared was offered by either party.

6. That regardless of the sharing of some amount of revenue from the oil and gas properties, the Court is persuaded by the statements made by Petitioner, under oath, that the Petitioner intended a gift to Respondent which removed the property from the marital estate and rendered the same as the separate property of the Respondent.

The trial court concluded that the realty and oil and gas leases were the separate property of Wife and were not subject to equitable division by the court.

¶ 6 Three months later, Husband filed a motion to vacate on two grounds: (1) the December 2003 affidavit was a forgery, and (2) he "has never stated an intention to give to the Respondent the real property." After oral arguments and briefing, the trial court denied the motion and entered a decree of divorce which did not include the realty and leases as marital property. Husband appeals.

### STANDARD OF REVIEW

¶ 7 An action for divorce, alimony, and division of property is one of equitable cognizance and the judgment of the trial court will not be reversed absent an abuse of discretion or unless the trial court's findings are clearly against the weight of the evidence. *Hough v. Hough*, 2004 OK 45, ¶ 9, 92 P.3d 695, 700.

### ANALYSIS

¶ 8 Initially, we note that Husband's right to appeal has not been waived by failure to timely seek review of the trial court's order regarding the property, because the court's decision was not a final judgment until entry of the divorce decree.

¶ 9 In his first proposition, Husband asserts the trial court erred in concluding that the realty and leases were the separate property of Wife. He asserts the transfers were

---

1. Most of these exhibits can be found in the appellate record.

shams and the parties continued to jointly use the property.

¶ 10 At common law, a husband and wife could not contract to convey one's interest in property to the other. *Manhart v. Manhart,* 1986 OK 12, ¶ 29, 725 P.2d 1234, 1238 (citing *Hamilton v. Hamilton,* 255 Ala. 284, 51 So.2d 13 (Ala.1950), and *O'Reilly v. Kluender,* 193 Mo. 576, 91 S.W. 1033 (1906)). Oklahoma modified this rule in 43 O.S.2001 ¶ 204:

> Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other as defined by the title on trusts.

¶ 11 In *Manhart,* the Supreme Court held that interspousal transfers were permitted by the statute, and a spouse could deed jointly-acquired property to the other spouse and thereby remove it from equitable division in a subsequent divorce proceeding. However, the Court cautioned:

> In any agreement affecting the property rights between spouses, there is a relation of special confidence and trust, requiring that the dealings with each other be conducted in utmost good faith and frankness. Where one spouse, through coercion or fraudulent transactions, gains an unjust advantage, the courts will set aside the agreement. *Mann v. Mann,* 135 Okl. 211, 275 P. 348 (1929); *Wooden v. Wooden,* 113 Okl. 81, 239 P. 231 (1925). The trial court may approve such an agreement, including one which will remove the property from the marital estate, if it is just and equitable, and include it in its judgment in awarding property in a divorce. *Seelig v. Seelig,* 460 P.2d 433 (1969). In determining whether an agreement is just, reasonable, and free of taint, the court must look beyond the terms of the agreement and consider the relationship of the parties at the time it is made, their ages, health, financial conditions, opportunities, and the contribution of each to the joint estate. . . .

*Id.* at ¶ 32,725 P.2d at 1239.

¶ 12 In determining whether an interspousal conveyance is bona fide, *Manhart* requires an examination into all the circumstances, including the reason for the conveyance, the relationship and condition of the parties, and their subsequent use of the property:

> If they jointly use and manage the property, then it may be considered "jointly acquired." *See Harden v. Harden,* 182 Okl. 364, 77 P.2d 721 (1938). The controlling facts in such cases are the time of the conveyance in relation to the separation of the spouses, and the completeness of their separation, especially in regard to their dealings concerning the conveyed property.

*Id.* at ¶ 40, 725 P.2d at 1240.

■■ ¶ 13 Interspousal transfers may occur as a result of a sale by one spouse to the other, as settlement of an impending divorce, or as a gift. However, gifts of either real or personal property require donative intent. *Larman v. Larman,* 1999 OK 83, ¶ 8, 991 P.2d 536, 540. When a spouse conveys property to another, without consideration, the character of the property does not change unless the conveying spouse has the intent to gratuitously pass the title to the other spouse. Absent donative intent, the original ownership regime of the property remains intact. For example, in *Larman,* the Supreme Court found that a wife did not lose her separate realty even though she conveyed it to herself and husband in joint tenancy, because she had no donative intent and had only transferred the property in order to refinance a mortgage on the property at a lower interest rate.[2]

■ ¶ 14 Here, however, Wife presented substantial evidence that Husband conveyed the realty and leases to her with donative intent. She presented Husband's 2002 testi-

---

2. *Dorn v. Heritage Trust Co.,* 2001 OK CIV APP 64, 24 P.3d 886, and *Bartlett v. Bartlett,* 2006 OK CIV APP 112, 144 P.3d 173, are additional authority for the proposition that the validity of interspousal conveyances must be decided by examining whether the conveying spouse had donative intent. However, those cases reached opposite conclusions as to whether a transfer for estate tax purposes constituted a gift. We more fully discuss *Dorn* later in this opinion.

mony in the Nowata County collection case, his 2003 affidavit, his attorney's 2004 affidavit, and her own affidavit. All of these documents indicate that Husband voluntarily and unconditionally transferred his joint interest in the realty and leases as a gift in order to avoid a divorce and to apologize for past conduct which produced a child and a substantial child support obligation. Unlike *Larman,* these reasons are consistent with donative intent. To use a common analogy, a spouse who buys his or her mate jewelry in order to apologize for an extra-marital affair and avoid a divorce would be hard pressed to convincingly argue that such "peace offerings" were not really gifts.

¶ 15 Nevertheless, Husband argues that the record contains compelling evidence that he conveyed the property as a sham to avoid his judgment creditor. He asserts that since he continued living on, working on, and sharing the property for four more years, the trial court was required to find that no gift was made. Husband relies upon *Dorn v. Heritage Trust,* 2001 OK CIV APP 64, 24 P.3d 886, for his contention that "it really makes no difference whey [sic] the property was titled or conveyed to one party or the other. Continued joint operation of the property over a four (4) year period was judged to be enough for joint property." Husband misreads *Dorn.*

¶ 16 *Dorn* is consistent with the Supreme Court's holding in *Manhart* and *Larman* that the effectiveness of an interspousal transfer is determined by the intent of the conveying spouse. In *Dorn,* another division of this Court concluded that a husband had no donative intent when he conveyed his interest in property to his wife's trust because the couple was not contemplating a divorce, the husband continued to have joint use of the trust property as a trust beneficiary, and the property had been conveyed merely for estate planning purposes.

■ ¶ 17 In contrast, the present record is devoid of evidence that Husband continued to exercise dominion and control over the property after his conveyance, or that he paid taxes or insurance on it, or was entitled to share in its profits and losses. Although Wife may have shared some of the oil royalties with him, there is little evidence that this was anything more than a gift of cash by one spouse to another. Ultimately, the evidence was conflicting and the trial court decided this conflicting evidence in favor of Wife. Where there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court unless such finding is clearly against the weight of the evidence. *Mueggenborg v. Walling,* 1992 OK 121, ¶ 5, 836 P.2d 112, 113–14. The trial court's finding that Husband's conveyances were gifts is not against the clear weight of the evidence.

¶ 18 Finally there is no evidence that the gift was unjust or inequitable. Virtually no evidence was introduced regarding the relationship of the parties at the time the gift was made, their health, financial conditions, opportunities, or the contribution of each to the joint estate. For all the reasons, therefore, Husband's first proposition fails.[3]

¶ 19 In his second proposition, Husband asserts the trial court erred because Wife "knew that the property was conveyed to her strictly to protect the assets from the child support lawsuit" and she now "uses these documents to her advantage." Husband relies on *Thomas v. Thomas,* 1910 OK 182, 109 P. 825.

¶ 20 In *Thomas,* the Supreme Court discussed the doctrine of constructive fraud in interspousal transfers. The Court noted that when a wife has already determined to abandon her husband and procure a divorce, and she conceals the plan from her husband, and induces him by false professions of love and affection to convey certain properties to her, such conveyances will be set aside as fraudulent. Here, however, there is no evidence that Wife fraudulently influenced Husband to deed the property to her with an existing intent to divorce him. In fact, the evidence indicates the conveyance was Husband's idea. Thus, this proposition of error also fails.

---

3. Husband presented no evidence that he was entitled to appreciation in the property given to Wife as a direct result of any substantial contributions through his own effort, skills, or funds. *See Templeton v. Templeton,* 1982 OK 127, 656 P.2d 250.

¶ 21 Finally, Husband asserts that the trial court erred in refusing to allow him to present evidence in support of his motion to vacate. The admission and exclusion of evidence is within the sound discretion of the trial court. *Jordan v. Gen. Motors Corp.*, 1979 OK 10, ¶ 12, 590 P.2d 193, 196. We will not reverse evidentiary decisions of the trial court absent an abuse of discretion which results in prejudice to the proponent. *Mills v. Grotheer*, 1998 OK 33, ¶ 3, 957 P.2d 540, 541.

¶ 22 In his motion to vacate, Husband asserted for the first time that his 2003 affidavit was a forgery. The trial court found that this allegation was not timely raised, and we agree. Husband relied upon the 2003 affidavit in the earlier collection case, had a copy of the affidavit well in advance of the December 2006 hearing, stipulated to the admission of the document at the hearing, and did not raise the issue of forgery for more than four months thereafter. We find no abuse of discretion in this ruling, or in the court's refusal to allow Husband to present evidence that he "never stated an intention" to give the real property to Wife. In fact, the record already contained indisputable proof otherwise. During his 2002 testimony in the child support collection case, Husband stated:

A. You know how women blow up, mine blew up. I mean, she went crazy. I said, I'll tell you what you can do. You can just have the land, you can have everything, I'll give it all to you, and I went right down to Carl Gibson. I said draw this up and give it all to her, let's just get it over with, and that's where it started with.

Q. So you just gave it to her?

A. Yes. We was going to get a divorce. I mean, that was all there was. I was out.

## CONCLUSION

¶ 23 For all these reasons, the trial court's order is hereby affirmed.

AFFIRMED.

RAPP and FISCHER, JJ., concur.