2010 OK CIV APP 1

In re the MARRIAGE OF Kyong S. MURPHY, Petitioner/Appellee/Counter–Appellant,

and

Michael O. Murphy, Respondent/Appellant/Counter–Appellee.

No. 106,118.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 4, 2009.

Certiorari Dismissed Dec. 20, 2009.

Rees T. Evans, Oklahoma City, Oklahoma, for Petitioner/Appellee/Counter–Appellant.

Robert A. Jackson, Robert P. Hall, Jackson, Hall & Associates, and Larry G. Cassil, Jr., Pierce, Couch, Hendrickson Baysinger & Green, LLP, Oklahoma City, OK, for Defendant/Appellant/Counter–Appellee.

KENNETH L. BUETTNER, Judge.

¶ 1 Michael Murphy (Husband) and Kyong Murphy (Wife) both appeal from the trial court's final decree in the dissolution pro-

---

1. The April 22, 2008 Memorandum expressly provides that "[u]nless specifically amended by this document, the holdings of this Court in [the

ceeding filed by Wife, alleging errors with the trial court's property division. Husband's appeal addresses the trial court's failure to award him (1) an equitable share in the enhanced value of Wife's separate business, (2) a credit for joint funds used for her business, (3) additional property division alimony for Wife's wasting of marital funds, and (4) reimbursement for his separate funds used to pay joint debts. In her counter-appeal, Wife seeks reversal of the trial court's classification of her separate property as jointly acquired. We affirm the judgment.

¶ 2 A dissolution of marriage action is one of equitable cognizance in which the trial court has discretionary power when dividing the marital estate. *Teel v. Teel*, 1988 OK 151, 766 P.2d 994. Our standard of review for the issues raised by both appeals requires us to review all of the evidence presented to the trial court and to sustain the trial court's judgment unless the trial court abused its discretion or unless the court's findings were clearly against the weight of the evidence. *Hough v. Hough*, 2004 OK 45, 92 P.3d 695.

## FACTS

¶ 3 When Husband and Wife were married in April of 1999, he was an electrician and part-owner of "Murphy Electric Inc.," and Wife owned a retail liquor business called "Amy's Liquor." Each had children from prior marriages, and during their six years together, no children were born.

¶ 4 Wife moved to dissolve their marriage in December 2005. Trial was held September 29, 2006, and continued to December 11, 2006 and March 6, 2007. The trial court's initial findings were in the form of a Memorandum Opinion filed December 7, 2007. Ten days later, both parties filed motions to reconsider. The trial court sustained their motions and filed a second Memorandum Opinion April 22, 2008, correcting several findings and affirming the remaining ones.[1] The trial court's Decree of Dissolution of Marriage was filed June 23, 2008. Hus-

---

December 7, 2007 Memorandum Opinion], shall remain the Order of the Court in this case."

band's appeal and Wife's counter-appeal followed.

### ANALYSIS

■ ¶5 As a preliminary issue, Wife argues that Husband waived for appellate review the issues of "wasting marital funds" and "his Kaufman account," because neither issue was raised in Husband's "motion for reconsideration." For this argument, she relies on 12 O.S.2001 § 991(b) and Sup.Ct.R. 1.26(a), both of which deem as *waived* any allegations of error raised on appeal that were *available but not asserted* in a party's motion for new trial *nor fairly comprised* within the grounds of that motion.

¶6 Wife's authorities, however, apply to motions for a new trial or a functional equivalent, *e.g.*, motions to reconsider, modify, vacate, open or correct, that are filed not later than 10 days after the filing of a judgment, decree or final order, *not to* "intermediate" or "interlocutory" orders, *i.e.*, nonfinal orders made in the course of action over which the trial judge had complete control to modify at any time before judgment. *See LCR, Inc. v. Linwood Properties*, 1996 OK 73, 918 P.2d 1388. Furthermore, § 991(b) and Sup.Ct.R. 1.22(c)(1) expressly apply to a motion for new trial that was filed *and denied* by the trial court.

¶7 In this case, the trial court sustained the parties' separate motions to reconsider the December 7, 2007 Memorandum Opinion, accepted their additional written requests for reconsideration, and then modified some of its previous findings in its April 22, 2008

Memorandum Opinion. Both Memorandum Opinions are nonfinal interlocutory orders because at the conclusion of each, the court expressly orders Wife's counsel to prepare a *final* decree "in conformity with the rulings of the Court." *See Frazier v. Bryan Memorial Hospital Authority*, 1989 OK 73, 775 P.2d 281. Because Husband did not file a motion for new trial or functional equivalent after the filing of the *final* Decree of Dissolution, to which § 991(b) and Sup.Ct.R. 1.26(a) expressly apply, Wife's waiver argument fails.[2]

¶8 Our analysis begins with the property addressed by Husband's appeal and Wife's counter-appeal that the trial court identified as the "major issue" in the case—the marital home located on a six acre tract (Tract 1) *and* an adjoining nine acre tract (Tract 2), both situated in Canadian County, Oklahoma (collectively, Richland Road).[3] The trial court found that Richland Road, owned by Wife prior to marrying Husband as a result of a divorce settlement with her former husband, lost its separate nature and became part of the marital estate. Because Wife seeks to reverse that finding, the success of which would be dispositive of Husband's allegations about the trial court's valuation of Richland Road, Wife's arguments will be addressed first. Before doing so, a brief summary of undisputed facts relevant to this property is necessary.

¶9 Four months before their marriage in April 1999, Husband and Wife moved into a new house built on Tract 1 by Wife and her former spouse. On July 27, 2000, Husband and Wife, as "Trustors," executed a trust

2. Pursuant to the Supreme Court Order filed May 7, 2009, consideration of Wife's motion to strike Husband's supplemental record was deferred to this court. That record includes the trial court's Order To File Letter, filed April 9, 2009, to which is attached Husband's letter of reconsideration dated February 27, 2008 that his counsel mailed to the trial judge but was never filed with the Court Clerk. Although Husband did not initially comply with Sup.Ct.R. 1.36, Wife does not now allege any procedural infirmities with the subsequent trial court proceedings to supplement the record. Because we conclude § 991(a) does not apply to Husband's letter of reconsideration, its inclusion in the supplemental record is irrelevant to the issues on appeal. Wife's motion is denied.

3. The only deed of record for this property admitted into evidence has a long metes and bounds description for each "tract." The "marital home" or "6 acres," as used by the parties, is designated as "Tract 1" and contains "6.590 acres more or less." The adjoining "9 acres" is designated as "Tract 2" and contains "8.749 acres more or less." During the hearing, Wife confirmed that both tracts are "all described as 11500 N. Richland Road." Rather than the Decree of Dissolution, which refers to the "[r]esidential property at 11500 Richland Road, [city, county, state] and the adjoining nine (9) acres" and sets out each tract's legal description, we refer to both properties as simply "Richland Road."

prepared by an attorney, entitled the "Michael O. Murphy and Kyong S. Murphy Family Trust dated July 27, 2000" (the Family Trust), for which they reserved the power to revoke or amend.[4] Trustors appointed "Michael O. Murphy and Kyong S. Murphy" to be the "Trustees" (Co–Trustees) and the income beneficiaries of the Family Trust. On July 27, 2000, Husband and Wife executed a quit claim deed which conveyed Tract 1 *and* Tract 2 to Husband and Wife as Co–Trustees of the Family Trust.

¶ 10 Three years later, Husband and Wife decided to refinance Tract 1. As required by the lenders, Co–Trustees of the Family Trust executed a warranty deed on April 14, 2003, conveying *only* Tract 1 to themselves, as joint tenants with rights of survivorship. *That same day,* after Husband and Wife executed the loan documents and obtained the funds, they reconveyed Tract 1 back to the Family Trust.

¶ 11 In its December 7, 2007 Memorandum Opinion, the trial court relied on *Larman v. Larman,* 1999 OK 83, 991 P.2d 536,[5] finding that a presumption of a gift of Richland Road from Wife to Husband arose from the April 14, 2003 joint tenancy deed, and that Wife's refinancing evidence was a collateral purpose for that deed which would have rebutted the presumption but for the second deed reconveying that property to Co–Trustees who had "joint authority" over Richland Road. In its April 22, 2008 Memorandum Opinion, the trial court expressly declined reconsideration of that ruling.

¶ 12 Wife argues that the trial court misapplied *Larman,* claiming the uncontroverted evidence establishes that Wife did not intend to effect a spousal gift of Richland Road by transferring it into the Family Trust, whose purpose she contends was to safeguard that property for her daughter. In her second proposition, Wife argues that, even if this court does not reverse the ruling as to Tract 1, the trial court's inclusion of Tract 2 in the marital estate should be reversed because it was never mortgaged and never part of the refinance of the remainder of Richland Road.

¶ 13 Wife's second argument points out two factual errors upon which the trial court relied to classify Richland Road as marital property. First, the record confirms that Tract 2 was neither involved in the parties' 2003 refinancing process nor was it included in the property description of either the joint tenancy deed or the warranty deed to the Family Trust. Second, the Family Trust was executed in 2000, some three years *prior* to the refinancing process, *not subsequent to* the change in title to joint tenancy, as the trial court concluded.

¶ 14 Because it is incorrectly premised on the *concurrent* execution of the two April 14, 2003 deeds and the Family Trust, the trial court's gift presumption analysis does not apply to Tract 2. However, the trial court's analysis regarding the transfer of Tract 1 into the Family Trust April 14, 2003, as overcoming the *Larman* exception, equally applies to the initial conveyance of Tracts 1 and 2 in July 2000. The record demonstrates that Wife and Husband conveyed both Tract 1 and Tract 2 to the Family Trust in July of 2000, the first of the parties' three interspousal conveyances. Since there is no evidence of any amendment to the trust, Co–Trustees' *joint authority* over Richland Road, on which the trial court based its decision to include that property in the marital estate, would clearly have *pre-existed* the entire refinancing process and necessarily have extended to Tract 1 *and* Tract 2 *prior* to the April 14, 2003 joint tenancy deed. Regardless of these errors, if the trial court

---

4. The Family Trust provides in ¶ 18.1, that "Trustors, so long as either of them are alive, reserve the right at anytime, by an instrument in writing delivered to Trustees to revoke or amend this Trust in whole or in part. The duties and liabilities of Trustees shall under no circumstances be substantially increased by Amendment hereunder except with its written consent."

5. The *Larman* Court held that the presumption of a gift to the marital estate that arises from a

spouse's conveyance of separate property into joint tenancy ownership with the non-owning spouse may be rebutted by clear and convincing evidence of a collateral purpose which is contrary to a gift. In *Larman,* the wife rebutted the gift presumption by establishing that the lender required the parties to execute a joint tenancy deed in order to refinance the property she had inherited.

reached the right result, *albeit* on incorrect reasons or theory, we must affirm its decision. *Merritt v. Merritt*, 2003 OK 68, 73 P.3d 878.

¶ 15 The Oklahoma Supreme Court held in *Manhart v. Manhart*, 1986 OK 12, 725 P.2d 1234, that 43 O.S.2001 §§ 204 and 205 allow spouses to contract with each other and alter their legal relations as to property by conveying jointly acquired property from the marital estate to the other spouse's separate estate. The Court then concluded that:

> "*Whether* the property *remains* the separate property of the spouse to whom it is conveyed, *depends on how the spouses treat the property.* If they *jointly use and manage* the property, then it may be considered 'jointly acquired.' The *controlling facts* in such cases are the time of the conveyance in relation to the separation of the spouses, and the completeness of their separation, especially in regard to their dealings concerning the conveyed property." (Emphasis added.) *Id.*, 1986 OK 12, ¶ 40, 725 P.2d at 1240.

¶ 16 Since *Manhart*, the Oklahoma Supreme Court held in *Standefer v. Standefer*, 2001 OK 37, ¶ 16, 26 P.3d 104, 108, that "[s]pouses may treat *separate property* in a manner so that it alters their legal relationship to the property, and it becomes property of the marital estate." The *Standefer* Court similarly considered how the spouses had *initially* handled their separate tort claims when deciding if certain settlement funds were jointly acquired and subject to equitable division, as the trial court had ruled. Because the spouses had negotiated a joint settlement, sought a joint cash payment and jointly-issued annuities, and deposited their annuity payments to their jointly-held account, the Court concluded that any separate interest each spouse had in their claims had lost its identity as separate property. *Id.* ¶ 16. Based thereon, the *Standefer* Court held that the trial court's classification of the settlement funds as marital property was not clearly contrary to the weight of the evidence. *Id.* ¶ 18.

¶ 17 Beginning with the parties' conveyance of Richland Road into the Family Trust, based on *Manhart* and *Standefer*, we conclude the parties jointly used and managed the property. Pursuant to the trust, Husband and Wife were the co-trustors for whom they reserved the right to revoke and amend the trust. They were also co-trustees. If either died, the remaining original trustee would become the successor trustee, and upon his or her death, Wife's daughter would become the trustee and the ultimate beneficiary.[6] Husband and Wife were the trust's income beneficiaries, for whose *primary purpose* the trust was expressly created and which express purpose negates Wife's argument that the trust was only intended to safeguard her property for her daughter.[7]

¶ 18 When funding the Family Trust, Co-Trustees transferred to a single "Trust Estate"[8] Richland Road and a jointly-acquired investment property, and Husband transferred his separate property, including a residential property in Bethany, Oklahoma, a subdivision lot in Oklahoma City, and a brokerage account. Their power over the Trust

---

6. Paragraph 2.2 of the Family Trust provides that "upon the death of both [Husband and Wife] this trust shall terminate, and after payment of last illness ....the accumulated income and corpus of this trust shall be distributed to [Wife's daughter]." Paragraph 11.1 provides that "[i]n the event of the death, disability or incapacity of either Michael O. Murphy or Kyong S. Murphy, then the other Co–Trustee shall be designated as Successor Trustee. In the event of the death ... of the survivor of the original designated Co–Trustees, then and in that event, [Wife's daughter] shall be designated as Trustee, with all the rights and powers of the original trustees."

7. According to ¶ 14.1 of the Family Trust, entitled "Purpose and General Construction of Trust," the *"primary purpose and intent* of Trustors in creating the trust under this agreement is *to benefit those who shall from time to time be income beneficiaries* thereof, and *the rights and interest of remaindermen and of successor income beneficiaries are subordinate to that purpose.* The provisions of this agreement shall be liberally construed in the interest and for the benefit of the *current income beneficiaries* of the trust estate." (Emphasis added.)

8. Paragraph 1.1 provides that "Trustors," in consideration of acceptance by Trustees of the trust herein created, hereby convey ... the property described in Exhibit A, referred to as "Trust Estate." Both parties testified that Exhibit A was never drafted, but admitted into evidence various conveyances of their separate and jointly acquired properties to the Family Trust.

Estate included the right to *jointly* direct the receipt of both income and principal during their lifetime and to *jointly* dispose of the property.[9] No changes to the Trust Estate occurred until the refinancing of Tract 1 in 2003 and in 2004 when Co–Trustees sold Husband's undeveloped land for about $20,000.00, which proceeds they deposited in a personal joint checking account.

¶ 19 The interpretation of a trust instrument is a question of law for the court. *In re Home–Stake Prod. Co. Deferred Compensation Trust*, 1979 OK 81, 598 P.2d 1193. Questions of law require a *de novo* review by the appellate court, for which it claims plenary, independent and non-deferential authority to reexamine a trial court's legal rulings. *Kluver v. Weatherford Hospital Authority*, 1993 OK 85, 859 P.2d 1081. In construing a trust document, the primary purpose is to ascertain and give effect to the settlor's intent. *In re Will of Dimick*, 1975 OK 10, 531 P.2d 1027. "Where the language of the instrument is free from ambiguity, the resort to parol evidence is prohibited, and the intent of the grantor must be ascertained from the terms of the instrument as a whole." *Crowell v. Shelton*, 1997 OK 135, ¶ 7, 948 P.2d 313, 315.

¶ 20 Considering its basic provisions, we conclude that the Family Trust is a "joint trust" or "joint revocable trust (JRT)." A simple JRT is created by and between both spouses as the co-grantors and co-trustees of the trust. Melinda Merk, *Joint Revocable Trusts for Married Couples Domiciled in Common–Law Property States*, 32 Real Prop. Prob. & Tr. J. 345, 352 (1997). Joint trusts are funded with some or all of the couple's separate or joint property by re-titling the property in the name of both spouses as co-trustees. *Id.* Each spouse typically has the right to receive trust income and principal as the spouses *jointly direct* during their lifetime. *Id.* Joint revocable trusts are an alternative estate planning technique which have become popular in common-law property states because they avoid probate and the need to sever jointly owned assets into separate trusts for each spouse. *Id.* at 346–347.

¶ 21 Joint trusts have an appeal to many married couples because they have the same ownership connotations as joint tenancy. Susan F. Bullard, *Drafting Joint Revocable Trusts*, 18 No. 3 Prac. Tax Law. 49, 50. In community property states, joint trusts are used to duplicate income tax benefits available to married couples in community property states.[10] *Id.* Joint trusts in common law property states are often drafted as two parallel trusts contained within a single document to avoid completed gifts between the settlors at the point of funding.[11] *Id.* at 52.

¶ 22 Our research reveals no Oklahoma case law that involves a joint revocable trust in the context of a dissolution of marriage or

9. Pursuant to ¶ 5 of the Family Trust, the powers granted to Trustees included, *inter alia*, the power to invest the liquid assets in any sound investments keeping in mind the primary purpose is the preservation of assets. The same paragraph provided that "Trustees shall have full right, power and authority to sell, convey or otherwise dispose of the whole or any part of any property at any time ... as Trustees shall deem advisable." The trust also contains a typical spendthrift provision.

10. In community property states the Internal Revenue Code provides a large tax advantage to married couples. At the death of the first spouse, the surviving spouse receives a full step-up in basis for not only the assets inherited from the decedent, but also for the surviving spouse's one-half share of community property held by decedent and the surviving spouse. *Id.* To maximize the usefulness of a joint trust and achieve the desired full step-up in basis at the first death,

it is important that the gifts be completed. If the gifts to the trusts are not completed gifts, then the decedent's estate will only include his or her contribution to the trust and the surviving spouse only receives a stepped up basis in the decedent's half of the trust assets. *Id.* at 52.

11. To avoid making a completed interspousal gift upon the completion of separately owned property to a joint trust, the agreement should give each spouse the unilateral right to revoke the trust and withdraw his or her respective share of separate or jointly owned property contributed to the trust. The trust agreement must also provide for the creation of separate shares to which each spouse's respective portion of separate or jointly owned property can be allocated. If contributions to a trust are commingled and held as a single fund, it would not be possible to identify property subject to a unilateral right to revoke. Merkle, at 357.

otherwise. Of the two cases addressing spousal conveyances to trusts,[12] *Bartlett v. Bartlett,* 2006 OK CIV APP 112, 144 P.3d 173, involves a transfer of a husband's *separate* property to his and his wife's separate revocable trusts. In that case, the husband argued the property remained separate because he had created the separate trusts solely to reduce or avoid paying estate taxes. Because Wife and Husband in this case testified that their reasons for executing the Family Trust included estate planning purposes and protection against potential lawsuits, we find *Bartlett* particularly instructive.

¶ 23 The Court of Civil Appeals in *Bartlett* identified the issue raised by the husband's argument as "whether [the husband's] stated reason for the change in title, estate planning and avoiding estate taxes, is a reason collateral to intending a gift, or whether that reason instead shows actual intent to gift an interest in the properties." *Id.* ¶ 17. The Court then held that "[i]n determining whether placing an asset in joint tenancy for the purpose of avoiding estate taxes rebuts the gift presumption, the trial court must consider whether the donor had an intent to transfer a *beneficial interest* in the property before death." *Id.* ¶ 20.

¶ 24 Considering the husband's transfers, the *Bartlett* Court found that it was necessary that he give part of his separate property to make each trust nearly equal "in order to receive the benefit of his tax planning measures." *Id.* The Court then distinguished the purpose of avoiding estate taxes from the joint ownership required by the

bank in *Larman,* finding "the joint ownership is required by the parties themselves, because they hoped to benefit from it on their deaths." *Id.* ¶ 22. Based on these reasons, the Court determined there was no collateral purpose to a gift.

■ ¶ 25 In this case, Wife's intent to transfer a beneficial interest in Richland Road "before death" is established by her conveyance of that property into a joint trust with a single trust estate comprised of the parties' separate and jointly acquired property for which she and Husband are the *income beneficiaries* during their lifetimes. By creating a joint trust, Husband and Wife sought not only joint ownership and management and legal protection of their combined properties during their lifetimes, but also estate planning benefits upon their deaths. As Co–Trustees, they exercised their joint ownership and management over the trust estate when they refinanced Tract 1 and sold Husband's separate property. Based on the parties' transfer of both Tract 1 and Tract 2 into the joint trust and all the benefits they received from its creation, the conveyances into the Family Trust was the functional equivalent of a transfer into joint tenancy. The trial court's classification of Richland Road as marital property was not clearly contrary to the weight of the evidence.[13]

¶ 26 Husband alleges the trial court erred by valuing Richland Road at only $212,208.00, arguing the minimum value should have been $292,000, as indicated by Wife's exhibit.[14] His argument is premised

---

12. *Dorn v. Heritage Trust,* 2001 OK CIV APP 64, 24 P.3d 886, the husband transferred his interest in jointly acquired property to his wife's revocable trust. The Court affirmed the trial court's decision that the trust property did not remain separate property because the transfer to the trust had occurred four years before separating and for the stated purpose of estate planning, and the wife had amended her trust, designating the husband as a beneficiary and co-trustee.

13. Because we affirm the trial court's inclusion of Richland Road in the marital estate, we do not address Husband's allegation seeking a credit for his separate funds, *i.e.,* the Kaufman account, that he claims were deposited into the parties' joint checking account and contributed to decreasing Wife's separate mortgage on that property.

14. Husband valued Tract 1 and Tract 2 separately. Although he and Wife testified that the $292,000 valuation from Wife's Exhibit 17, the "Comparative Market Analysis for 11500 Richland Road," was for only Tract 1, that 12 page analysis describes on every page, except for the first and last, the subject property as having "17 acres." We find no testimony explaining the 2 acre discrepancy between Wife's Exhibit 17 and the total "15.339 acres" gleaned from the parties' quit claim deed to the Family Trust, *i.e.,* Wife's Exhibit 14. We note the confusion in the testimony concerning the exact acreage for Tract 2, and that at one point, Wife testified she thought she had 13½ acres at Richland Road.

on the mistaken belief that $212,208.00 represents the trial court's determination of the fair market value for Richland Road.[15] Based on our review of the evidence and computations, the trial court apparently added the net equity claimed by Wife, $114,890.83, to the net equity claimed by Husband, $309,524.69,[16] and then divided by two the total equity, $424,415.52, to obtain the average equity of $212,208.00 for Richland Road ($424,415.52 ÷ 2 = $212,207.76). The trial court awarded Richland Road and its debt to Wife, then included $212,208.00 in Wife's share of the marital estate. Husband's award of $73,877, as alimony in lieu of property, was designed to achieve a 50–50% division considering all of the values determined by the trial court. Husband has failed to demonstrate that the trial court's calculation is against the weight of the evidence or an abuse of discretion.

¶ 27 Husband claims he is entitled to *additional* property division alimony for: (1) joint funds that benefitted Wife's separate property, Amy's Liquor Store, *i.e.,* purchase inventory and reduction of her mortgage and sales tax debt, and for (2) his labor and improvements there, all of which he claims increased the value of her business. Wife testified funds from her business paid those expenses and that any labor performed by Husband was minimal. The trial court expressly "decline[d] to award [Husband] reimbursement for funds expended or work performed by [him]."

¶ 28 In order for a spouse to successfully prove in a dissolution proceeding that enhanced value of the other spouse's separate property is a result of joint endeavors, it must be shown that the net worth of the separate property increased during marriage as a direct result of substantial contributions by the spouse of effort, skill or funds. *Templeton v. Templeton,* 1982 OK 127, 656 P.2d 250. The enhancement in value of one spouse's separate estate, when attributable to personal efforts of labor by *either* spouse, constitutes spousal property that is subject to division. The burden is upon the non-owning spouse to show that the enhancement sought to be declared as a marital share in the property of the other is the result of either spouse's in-marriage endeavors. *Larman v. Larman,* 1999 OK 83, 991 P.2d 536.

¶ 29 When determining a non-owning spouse's quantum of interest in the other's separate property, one of the "three critical value assessment elements" is the "cost/value of the separate property." *Thielenhaus v. Thielenhaus,* 1995 OK 5, ¶ 10, 890 P.2d 925, 931. The three cases Husband cites to support his position for equitable division of the increased value of Wife's separate business clearly demonstrate that *critical* element refers to evidence of the separate property's value *at the time of marriage.*[17]

¶ 30 Husband admits in his brief that "there is no exact value of Amy's Liquor Store at the time of the marriage of the parties." He attempts to correct that failure by reference to an exhibit of the value of Wife's commercial property they represented to a lender *three years after* their marriage, but Husband did not designate that exhibit

15. Exhibit A of the Decree of Dissolution, which sets out the division of marital property, provides that "Residential property at 11500 N. Richland Road ... and adjoining nine (9) acres, *valued* by the Court at $212,208.00." (Emphasis added.)

16. Wife's equity calculation [$292,000(fmv)—$177,109.17(debt) = $114,890.83] is taken from her revised summary of assets and debts admitted as "Petitioner's Exhibit 45." Husband's equity calculation [$486,524.69(fmv)—$177,000.00(debt) = $309,524.69] is taken from his marital balance sheet admitted as "Respondent's Exhibit 55."

17. *Ford v. Ford,* 1988 OK 103, 766 P.2d 950 (the evidence included the value of the husband's law practice *at the time of the marriage); Thielenhaus v. Thielenhaus,* 1995 OK 5, 890 P.2d 925 (the husband presented evidence of the *pre-marital value* of his pension fund). In the only case that involved an ongoing business, *Moyers v. Moyers,* 1962 OK 146, 372 P.2d 844, the Court affirmed the trial court's award of the wife's business as her separate property. Because the evidence *was undisputed* that the husband's active management and operation with his wife for many years had brought her business out of debt, the Court remanded the issue of its enhanced value because there was no evidence of the value of wife's business as a going concern *at the time of marriage.* Unlike in *Moyers,* the evidence of the use of joint funds and Husband's labor was sharply disputed.

for inclusion in the appellate record.[18] It is the duty of the appealing party to procure a record that is adequate to support the requested corrective relief. *Chamberlin v. Chamberlin,* 1986 OK 30, 720 P.2d 721. Without evidence of that critical element necessary for determining a quantifiable increase in the value of Wife's business, Husband's argument fails.[19]

¶ 31 Husband also seeks credit for joint funds that he claims Wife wasted on "non-marital" purposes. Husband admitted into evidence several checks drawn on their joint checking account by Wife totaling approximately $116,766,[20] some of which had written notes for their purpose, *e.g.,* "cash," "loan," or "earnest money." Claiming these expenditures had no marital purpose and furthered no marital goal, Husband seeks one-half of the funds he contends Wife "improperly spent."

¶ 32 This argument fails to consider that the trial court heard Wife's detailed testimony about each check, the specifics of how each was reimbursed and redeposited into their checking account, and that Husband had prior knowledge of each check. She further identified and admitted, without objection, several documents to support her testimony, and admitted three others over Husband's objections that they were "totally illegible" or "difficult to decipher ... they don't prove anything ... just not sufficient to make a record." In his reply brief, he further argues that "[Wife's] documents do not refute his claims" and "the trial court erred in finding that these documents support her testimony." As in this case, where there is conflicting evidence on an issue of fact, we must defer to the judgment of the trial court who observed the behavior and demeanor of the witnesses and was in the best position to gauge their credibility. *Mueggenborg v. Walling,* 1992 OK 121, ¶ 7, 836 P.2d 112, 114.

¶ 33 The trial court's classification of property and division is affirmed. The competing motions of Husband and Wife for an award of appeal-related attorney fees are denied.

AFFIRMED.

BELL, P.J., and HETHERINGTON, J., concur.

---

18. Husband's brief does not provide a cite to any trial transcript for testimony detailing Respondent's Exhibit No. 5, and our review of all three transcript reveals no such testimony.

19. It would also appear that Husband's work at the store would reduce expenses, thereby increasing net revenues, rather than increasing the net value of the business.

20. As detailed under Husband's second proposition, he admitted seven checks Wife had written totaling $124,656.89, but he fails to explain thereunder that he and Wife testified that the $7,890 check was for a replacement air conditioner for Richland Road.