**AMERICAN BIOMEDICAL GROUP, INC. an Oklahoma Corporation, and James K. Burgess, III, Appellees,**

v.

**NORMAN REGIONAL HOSPITAL AUTHORITY, an Oklahoma Non-Profit Corporation, Appellant.**

**AMERICAN BIOMEDICAL GROUP, INC. an Oklahoma Corporation, Appellant,**

v.

**NORMAN REGIONAL HOSPITAL AUTHORITY, an Oklahoma Non-Profit Corporation, Appellee.**

Nos. 78713, 80094.

Court of Appeals of Oklahoma, Division No. 3.

April 27, 1993.

Certiorari Denied June 22, 1993.

E. Paul Ferguson and George W. Velotta, II, Oklahoma City, for American Biomedical and James Burgess.

Judy H. Morse, Harvey D. Ellis, Jr., and Randal D. Sengel, Oklahoma City, for Norman Regional Hosp. Authority.

### MEMORANDUM OPINION

HANSEN, Chief Judge:

In this action arising from alleged breach of an agreement, Norman Regional Hospital Authority, (Hospital), seeks review of the trial court's judgment, entered on jury verdicts, in favor of American Biomedical Group, (ABG), and James Burgess, (Burgess). ABG seeks review of the trial court's order denying its motion to tax attorney fees.

In December 1987, ABG and Hospital executed a *Medical Contract Management Program Agreement* (Agreement).[1] The Agreement provided for a term of twelve months, with automatic renewal for twelve months thereafter.

During the second year of performance, Hospital claimed ABG had breached the Agreement with respect to ABG's compensation. It gave notice of cancellation and demanded refund of alleged overpayments.

ABG did not make the refund, and at the end of the contract term initiated this action. In its petition, ABG claimed Hospital had agreed to pay a certain amount for services under the Agreement and that ABG had performed all duties, but that Hospital had refused to pay the full amount agreed.

Hospital answered and counterclaimed for the alleged overpayments. Hospital alleged it had agreed to pay ABG, for administrative and management services, compensation based upon premiums for insurance coverage of equipment maintenance,

---

1. Under the agreement, Hospital designated ABG as Hospital's:

    ... sole and exclusive agent for the purpose of establishing a Medical Contract Maintenance Management Program which will provide low cost and reliable alternatives to the current maintenance and repair contracts with manufacturers, suppliers and vendors, covering the Hospital's bio-medical and technical equipment.

    These alternatives were to be developed through renegotiation of current contracts, recommendation of fee for service repair and recommendation for adoption of a "Corrective Maintenance Insurance Program".

and that ABG had misrepresented the cost of the coverage.

Hospital also moved to add Burgess, individually, as a party plaintiff and party to the counterclaim.[2] Burgess was president of ABG and signed the Agreement in that capacity. Hospital alleged his false representations induced it to enter into the Agreement.

The case was tried to a jury. The court denied Hospital's motion for a directed verdict, both at the close of ABG's evidence and at the close of all evidence. The jury returned a verdict for ABG in the amount of $50,520.66, the full amount claimed by ABG for breach of contract. The jury also returned verdicts for ABG on Hospital's counterclaim, and for Burgess on Hospital's counterclaim for fraud and Hospital's claim for punitive damages.

Hospital filed its petition in error in Appeal No. 78,713 from the trial court's judgment on the jury verdicts. On the same day, ABG filed its motion in the trial court to tax costs and attorney fees against Hospital.[3]

The trial court denied ABG's motion to tax attorney fees as costs, but awarded ABG other costs as the prevailing party. In support of its order, the trial court found ABG was not entitled to attorney fees under "12 O.S. § 936". ABG filed its petition in error in Appeal No. 80,094 from the order denying attorney fees. The Supreme Court consolidated the two appeals for consideration.

■ Hospital's first contention on appeal is that the trial court erred in overruling Hospital's motion for a directed verdict on the contract claims. In reviewing an alleged error in the denial of a motion for directed verdict, we will construe the evidence in the light most favorable to the party opposing the motion. *Oklahoma City v. Prieto*, 482 P.2d 919 (Okla.1971).

■ Where there is any evidence, or reasonable inference from the evidence, tending to establish a cause of action or to sustain a jury's verdict and judgment based thereon, we will affirm the judgment unless it is shown to be contrary to law. *Prieto*, at 922.

Hospital asserts resolution of the contract claims was dependent upon whether the Agreement "provided, as Hospital contended, a cost of premiums plus a 10% management fee, or something more, as [ABG] contended." Hospital argues the language of the Agreement requires reversal.

While the Agreement's section on ABG's compensation has several subsections, the parties appear to agree the operative subsection for this controversy is subsection 6.2, entitled *Compensation for Administrative and Management Services*. That subsection provides, in relevant part:

... Hospital hereby agrees to pay ABG an amount equal to Ten percent (10%) of the total cost of the *Corrective Maintenance Insurance Budget* procured pursuant to Subsection 4.4; ... (emphasis added).

Definition of the term "Corrective Maintenance Insurance Budget" is the central issue around which this matter revolves. The term is not defined in the Agreement, nor does subsection 4.4[4], or the other contractual terms, dispositively clarify the term.

■ The trial court found the Agreement was ambiguous and ruled that parol evidence would be admitted to explain its terms. Existence of an ambiguity is a decision to be made by the court. *Corbett v. Combined Communications Corp.*, 654 P.2d 616 (Okla.1982). After review of the

---

**2.** Hospital's motion was pursuant to 12 O.S.Supp.1988 § 2013(A) (compulsory counterclaim) and 12 O.S.Supp.1984 § 2019 (joinder of persons needed for just adjudication).

**3.** Burgess did not join in this motion, nor does the record reflect he filed such a motion individually.

**4.** Subsection 4.4 provides for a *Corrective Maintenance Insurance Program*, which includes a risk insurance contract, but also requires ABG to, *inter alia*, prepare and submit claims on behalf of Hospital, to review proceeds received under the insurance contract, and to provide Hospital with periodic financial reports and accountings.

Agreement, we find its compensation provisions are ambiguous and that the trial court ruled correctly.

■■ Where the intention of the parties is not clear from the writing, and is shown by parol evidence, a question is then presented for the trier of fact.[5] *State ex rel. Department of Highways v. Martin,* 572 P.2d 611 (Okla.App.1977).

Hospital provides a lengthy recital of evidence it argues is inconsistent with ABG's position in this case. It essentially is asking us to reweigh the evidence upon which the jury reached its verdict. We may not do so. As we noted above, unless a jury verdict is shown to be contrary to law, we must affirm a judgment from that verdict if it is supported by any competent evidence. *Oklahoma City v. Prieto,* 482 P.2d at 922.

Burgess testified that during the initial negotiation of the Agreement, he explained the proposed program to Hospital's Director of Materials Management. Burgess stated he advised Hospital's representative that ABG's management fee was:

> ... ten percent of the total Corrective Maintenance and Insurance Budget which is all inclusive of the insurance components, all your computer systems, our engineering support, alternate sourcing of parts, our reporting mechanisms ...

Burgess expressly denied telling Hospital ABG's management fee would be ten percent of insurance premiums, and denied that the amount of the insurance premiums was discussed. He equated Corrective Maintenance Insurance Budget to the term Estimated Repair Cost (ERC), used in Schedule A to the Agreement.

Schedule A itemizes the ERC for each piece of equipment in the program. Burgess testified the "true repair cost" is estimated by analyzing the age, condition, prior maintenance record, utilization and similar considerations of each item, and then add ABG's costs to support the item.

Burgess acknowledged ABG prepared two ERC's. The first contained inclusive costs, and was presented to Hospital as the basis for ABG's compensation. The second ERC contained only the estimated "true repair cost", and was presented to the risk insurer to determine its premium for the repair and maintenance policy. Burgess stated he told Hospital there would be two ERC's.[6]

Burgess further testified Hospital's cancellation affected only the insurance component of the program. He stated ABG continued to perform under the Agreement until May 1990, the end of the extended term.[7]

In explaining ABG's alleged damages, Burgess stated the "total program cost" of the second one year term was $303,729.00, which included the risk insurer's premium of $206,891.00. ABG subtracted the returned premium, and Hospital's initial payment at the beginning of the second term, to determine the $50,520.66 damages.

Burgess explained the non-insurance components of the total program cost on cross-examination. Other than ABG's management fee, which we previously discussed, these components were "stop loss of 10% overage", agency fee, computer and software license and engineering. These comport to the program elements Burgess stated he explained to Hospital during negotiation of the Agreement.

■ Without setting forth the detail of these explanations, we find they meet the "any competent evidence" standard to sup-

---

**5.** The trial court properly instructed the jury that any uncertainty in the Agreement must be interpreted against ABG, the party who drafted it and caused the uncertainty to exist.

**6.** Hospital contends it was never advised there would be two ERC's and was unaware there were two until it demanded Burgess explain compensation. Hospital argues this duality in support of its fraud allegations.

**7.** Burgess stated ABG continued "to pay claims and get them submitted and get them paid, go to the hospital and get corrections, our computer system, our engineering assessments of fixing and repairing systems and everything else that goes into our total program, our total budget". These activities pertained to items in need of repair prior to cancellation, with a lag time of 90–120 days to full accounting.

port ABG's damages. We further find the evidence sufficient to withstand Hospital's motion for directed verdict and to support the trial court's judgment entered on the jury verdicts.

Hospital next contends a new trial should be ordered because extrinsic evidence was improperly excluded, and the jury was improperly instructed not to consider admitted extrinsic evidence and on Burgess's defenses of waiver and estoppel.

The excluded evidence was Burgess's purported admission that the hospitals under ABG's program were to pay only ten percent of insurance premiums, and a purported written marketing agreement between ABG and the Voluntary Hospitals of America of Oklahoma (VHA)[8]. The record reflects ABG wanted to market its program through VHA to VHA's hospital members.

The admission was allegedly contained on an audio tape recording of a meeting between Burgess and VHA's president. The meeting was held in May 1990, after this action had been filed, and almost two and one half years after the parties here executed the Agreement. Hospital proffered the tape as an offer of proof at the conclusion of evidence, but did not proffer a written agreement.

Hospital argues the tape was admissible as evidence of a party admission, citing *Ellis v. Race*, 398 P.2d 805 (Okla.1965). Similarly, Hospital argues the ABG–VHA agreement was admissible as evidence of a contract between a party and a third person, which is connected to the contract between the parties.

■ The exclusion of evidence is a matter addressed to the sound discretion of the trial court, and we will not disturb such ruling in the absence of a showing of abuse of discretion. *City National Bank v. Jackson National Life Insurance*, 804 P.2d 463 (Okla.App.1990). There must be a

strong showing of prejudice to the proponent, or a breach of his fundamental rights. *Madill Bank and Trust Co. v. Herrmann*, 738 P.2d 567 (Okla.App.1987).

■ We find no abuse of discretion in excluding the evidence in question. A transcript of the proffered tape reveals that if any agreement existed prior to the taped meeting, it would be impossible to determine at what point there was a "meeting of the minds".

It is uncontroverted there were offer and counteroffer versions of the proposed ABG–VHA agreement, and there was no single document that both parties had signed. The transcript clearly reflects an ongoing negotiation toward ABG–VHA agreement. We are further disadvantaged in determining the relationship between ABG and VHA by Hospital's failure to proffer the purported written agreement.[9]

Even presuming the relevance of the excluded evidence, if the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, delay or needless presentation of cumulative evidence, the evidence may be excluded. *Madill Bank and Trust Co. v. Herrmann*, at 571; 12 O.S. 1981 § 2403.

We find the excluded evidence would likely lend more to confusion than clarification for the jury. Further, VHA's president was allowed, in another context, to testify that Burgess had told him ABG's compensation would be based on ten percent of insurance premiums. There is no strong showing by Hospital of prejudice to its case, or a breach of its fundamental rights. The exclusion of evidence was a proper exercise of the trial court's discretion.

Hospital next alleges the jury was improperly instructed not to consider admitted extrinsic evidence on the question of fraud. This evidence related to negotia-

---

**8.** VHA Oklahoma is a non-profit organization composed of sixteen hospitals, and is a member of the national organization.

**9.** In the absence of a showing in the offer of proof that the purported written ABG–VHA

agreement was unavailable, offered testimony relating to such agreement will not be considered. See, *Agricultural Insurance Co. of Watertown, N.Y. v. Iglehart*, 386 P.2d 145 (Okla.1963).

tions and contracts between ABG and VHA, and between ABG and another of VHA's member hospitals.

The trial court instructed the jury it could consider the evidence for the purpose of defining or explaining the terms of the Agreement, but that it could not consider the evidence as tending to prove that Burgess intended to defraud Hospital.

While Hospital's contention is on its face directed toward the court's instruction, we find the issue more appropriately in the nature of an exclusionary ruling. In its motion in limine, ABG asked the trial court to exclude, for any purpose, all evidence concerning ABG's negotiation and contracts with non-parties.

The trial court ruled such evidence could be admitted, but could be used only to define contract terms. The court found using such evidence to show intent to defraud would violate 12 O.S.1981 § 2403.[10]

■ Once the trial court properly admits evidence which is competent for one purpose, but incompetent for another, it must instruct the jury limiting the scope of the purpose for which it is competent. See, *Chowins v. Gypsy Oil Co.*, 185 Okl. 630, 95 P.2d 586 (1939). Thus, the instruction was proper if the trial court's ruling on the motion in limine was proper.

■ We must again look to the probative value balancing test set out in 12 O.S. 1981 § 2403, with the standard of a strong showing of abuse of discretion. Hospital contends the evidence should have been admitted under 12 O.S.1991 § 2404(B) as evidence of Burgess's wrongful acts and similar dealings with other parties to prove his motive, intent, preparation and common scheme or plan.

In its note to § 2404, the Evidence Subcommittee commented that the highly prejudicial nature of character evidence admissible under [§ 2404(B)] should suggest great caution in determining whether such

evidence should be admissible under [§ 2403] on grounds of unfair prejudice.

Hospital only generally states the nature of the evidence which was limited—"dealings with third parties (VHA and other VHA hospitals)". Hospital does not specify the evidence which it believes should have been considered on the issue of fraud, nor does it specify how it was prejudiced by the limitations imposed by the trial court.

Using the caution suggested by the Evidence Subcommittee in its comments on § 2404, we feel constrained not to presume prejudice. We find no abuse of discretion in the trial court's order limiting consideration of evidence concerning Burgess's dealings with non-parties to this action.

■ Hospital's final allegation of error is that the trial court improperly instructed on Burgess's defenses of waiver and estoppel to Hospital's claim of fraud. It is well established that the trial court must instruct on issues raised by pleadings and supported by evidence. *Nail By and Through Nail v. Oklahoma Children's Memorial Hospital*, 710 P.2d 755 (Okla.1985).

■ Burgess raised the affirmative defenses of waiver and estoppel in his answer to Hospital's counterclaims and reiterated the defenses in his trial brief. We find the issues were sufficiently supported by the evidence.

Considering waiver and estoppel as applied to an assertion of fraud, our Supreme Court restated the rule set forth in *Scott v. Signal Oil Co.*, 35 Okl. 172, 128 P. 694:

A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary.

*Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, 455 P.2d 81 (Okla.1969)

While controverted by Hospital, Burgess testified he advised Hospital the mainte-

---

**10.** 12 O.S. 1981 § 2403 provides: Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

nance and repair program was made up of various components, of which insurance was only one. Burgess further testified he informed Hospital there were two Estimated Repair Costs (ERC) prepared for attachment to the Agreement with the schedule of covered equipment. The first ERC was based on all program components costs and would be Hospital's cost. The second ERC was for the risk insurer and contained only the "true repair cost" for the covered item of equipment.

The record reflects ABG based its refund to Hospital on equipment removed from the program on the overall program cost, including ABG's management fee, and that Hospital accepted this refund. This was before Hospital agreed to the extended second term. Hospital also accepted a "shared savings" check based on a percentage of the overall program cost.

Considering the foregoing evidence together, the jury, if it believed the evidence, could have determined Hospital had waived any misrepresentation by Burgess, or was estopped to raise any misrepresentation, by its failure to repudiate the Agreement after it became apparent ABG and Burgess were acting inconsistently with Hospital's understanding of compensation terms. We find no material error in the trial court's instruction on waiver and estoppel. The judgment on the jury verdicts is affirmed.

■■■ ABG appeals from the trial court's order denying attorney fees. ABG bases its argument on the statutory authority found in 12 O.S.1991 § 936, and claims no contractual right to attorney fees.[11] Section 936 provides, in relevant part:

> In any civil action to recover ... for labor or services, ..., the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

ABG contends it is entitled to such attorney fees for either the prosecution or defense of all claims or counterclaims in this action. We agree in part.

**11.** Under Oklahoma law, as a general rule, attorney fees may only be awarded when authorized by statute or under the terms of an enforceable contract. *Burrows Construction Com-*

Because the "labor or services" portion of § 936 is the latter of several amendments, each adding authority for other types of actions, the section has been the subject of considerable examination by our Appellate Courts to determine Legislative intent.

■■■ In our view, the most relevant holding is in *Burrows Construction Company v. Independent School District No. 2 of Stephens County,* 704 P.2d 1136 (Okla.1985):

> The question is whether the damages arose directly from the rendition of labor or services, such as a failure to pay for those services, or from an aspect collaterally relating to labor or services, such as loss of profits on a contract involving the rendition of labor or services.

It is only in the first type of action that the Supreme Court found attorney fees authorized. We find only that part of this action relating to ABG's claim for its "management fee" arises directly from the rendition of labor or services.

ABG, in its brief on this issue, itself differentiates between its management fee and its other claims for damages, referring to the other claims as "expenditures related thereto" or "out-of-pocket expenditures". The record reflects ABG cast these latter expenditures as Hospital's reimbursement to ABG of budget items or program costs. ABG conceded its "compensation" under the Agreement was only the ten percent management fee.

ABG's arguments in relation to entitlement for attorney fees for defense of Hospital's counterclaims are equally unpersuasive. It argues the gravamen of Hospital's claim against ABG was for overpayment of labor or services, bringing it within the purview of § 936. We find the claim only collaterally related to labor or services under the holding in *Burrows Construction,* and therefore does not entitle ABG to its requested attorney fees.

*pany v. Independent School District No. 2 of Stephens County,* 704 P.2d 1136, 1137 (Okla.1985) (footnote 2).

We find no authority allowing ABG to recover attorney fees for the defense of Hospital's claims against Burgess individually. However, ABG argues it is entitled to attorney fees for defending against the fraud counterclaim because the fraud counterclaim and the breach of contract counterclaim "were so intertwined and interrelated that ABG was required to devote time to discovery and preparing the defense against [Hospital's] counterclaims which would have been necessarily incurred, even if Burgess had not been a party to the litigation".

We need not decide the merits of this argument because we found ABG is not entitled to attorney fees for defense of *any* counterclaims, even the breach of contract claim against ABG. Additionally, ABG did not include the fraud counterclaim issue in its petition in error, nor is it fairly implied in any of the issues raised. We need not address it further here. *Marquette v. Marquette*, 686 P.2d 990 (Okla.App.1984).

This matter is REMANDED to the trial court for the sole purpose of determining reasonable attorney fees for ABG's prosecution of its claim for its management fee.

ABG's request for appellate attorney fees is DENIED.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

BAILEY, P.J., and HUNTER, J., concur.