2012 OK CIV APP 54

**QUIKTRIP CORPORATION,**
**Plaintiff/Appellant,**

v.

**ABATEMENT SYSTEMS, INC.,**
**Defendant/Appellee.**

**No. 108,509.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

March 9, 2012.

Scott F. Lehman, Mark T. Steele, Brian J. Goree, Ambar I. Malik, Latham, Wagner,

Steele & Lehman, P.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Michael L. Carr, Jane R. Cowdery, Aaron J. Goodman, Holden & Carr, Tulsa, Oklahoma, for Defendant/Appellee.

JANE P. WISEMAN, Judge.

¶1 Plaintiff, QuikTrip Corporation (QT), appeals a jury verdict finding in favor of Defendant, Abatement Systems, Inc. (ASI), on Plaintiff's breach of contract claim and finding in favor of ASI on its breach of contract counterclaim. After review of the record and relevant law, we affirm the rulings of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On May 31, 2007, ASI entered into an Asbestos Abatement Contract with the then-owner of the Camelot Hotel, Maharishi Ayur–Veda University, Inc. On June 26, 2007, Maharishi Ayur–Veda University, Inc., executed an Assignment of Asbestos Abatement Contract to QT, which had purchased the Camelot Hotel property, intending to demolish it to construct a convenience store on the site. On July 17, 2007, ASI and QT signed the "First Amendment to Asbestos Abatement Contract" which provided that ASI would also be responsible for "cleaning, abating and/or remediating all furniture, carpet, debris and moveable objects ... and then move the same to a location onsite that is agreeable to [QT]." [1] Pursuant to the Contract and the Amendment, ASI was to provide asbestos abatement services on the demolition site, including removal of debris from the hotel's interior.

¶3 On September 18, 2007, ASI employees were at the Camelot Hotel performing asbestos abatement and other related activities as defined by the Contract when a fire occurred on the hotel premises damaging the property. According to its petition, QT claims "[t]hat as a direct result of ASI's actions or inactions, a fire broke out that afternoon at the Camelot Hotel in an area under the exclusive control and management of ASI employees causing substantial damage to the

1.  QT's Ex. No 3.

property." QT alleges ASI "breached the terms and provisions of the Contract when ASI failed to conduct its operations in such a manner that no undue hazard would result." QT further asserts that because of ASI's breach, "a fire broke out at the Camelot Hotel which significantly damaged the structure and substantially increased the overall costs to [QT] on the project." QT also stated a claim for "res ipsa loquitur-inference of negligence" against ASI, contending that the fire occurred in an area under the exclusive control of ASI employees and was the kind that would not ordinarily have taken place in the absence of negligence.

¶ 4 ASI answered, denying QT's breach of contract and negligence allegations, and filed a counterclaim alleging QT breached the Contract by failing to pay ASI the remaining sum owed in the amount of $20,500 after ASI fully performed the contract. QT denied these allegations.

¶ 5 ASI also filed a third-party petition against D-T Specialized Services, Inc. (D-T), who had contracted with QT to provide demolition services and to remove debris from the site. ASI claimed that D-T employees were working on the premises when the fire broke out and that the fire resulted from their "actions and/or inactions" in failing to remove from the site the debris which caused the fire. ASI claimed that as a direct result of D-T's employees' negligence, D-T should be liable to ASI for indemnity and/or contribution for any damages assessed against ASI associated with the Camelot Hotel fire. D-T denied its employees were negligent. Even if found to be negligent by virtue of its employees' actions or inactions, D-T further denied its negligence caused ASI's damages, if any.

¶ 6 In an order filed May 13, 2010, the trial court dismissed D-T without prejudice as a party to this lawsuit. Before trial, QT dismissed without prejudice its negligence claim against ASI but proceeded to trial with its breach of contract claim against ASI.

¶ 7 At the trial's conclusion, the jury returned two unanimous verdicts: one in favor of ASI on QT's breach of contract claim and one in favor of ASI on its breach of contract counterclaim, awarding ASI $18,500 in dam-

ages. The trial court further awarded "prejudgment interest from 1-1-08 to 5-19-10 in the amount of $2,760.53, for a total of $21,260.53, plus post-judgment interest thereon at the rate allowed by law." The trial court also awarded ASI costs and attorney fees to be determined upon application.

¶ 8 QT appeals.

## STANDARD OF REVIEW

¶ 9 We review the denial of a motion for directed verdict *de novo*. *Computer Publ'ns, Inc. v. Welton*, 2002 OK 50, ¶ 6, 49 P.3d 732, 735. "Regarding as true all evidence favorable to the non-moving party and all reasonable inferences drawn therefrom, and disregarding all evidence favorable to the moving party, we must affirm the denial unless there is an entire absence of proof on a material issue." *Id.* "Similarly, considering all the evidence tending to support the verdict together with every reasonable inference deducible therefrom, and rejecting all evidence adduced by the adverse party which does not support the verdict, we must affirm a jury verdict if there is any competent evidence reasonably tending to support it." *Id.*

¶ 10 "The test of reversible error in giving jury instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered had the errors not occurred." *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 25, 154 P.3d 1240, 1248.

¶ 11 "Whether a contract term is ambiguous so as to require extrinsic evidence to determine the intent of the parties is purely a question of law for the court." *Ahlschlager v. Lawton Sch. Dist.*, 2010 OK 41, ¶ 19, 242 P.3d 509, 515. " 'The construction of an unambiguous contract is a matter of law for the court.' " *Id.* (quoting *Ferrell Constr. Co. v. Russell Creek Coal Co.*, 1982 OK 24, ¶ 9, 645 P.2d 1005, 1007).

¶ 12 "The admission and exclusion of evidence is within the sound discretion of the trial court." *King v. King*, 2009 OK CIV APP 49, ¶ 21, 212 P.3d 1232, 1237. "We will not reverse evidentiary decisions of the trial

court absent an abuse of discretion which results in prejudice to the proponent." *Id.*

## ANALYSIS

*I. Motion for Directed Verdict*

¶ 13 QT first argues the trial court erred in denying its motion for directed verdict on its breach of contract claim. In its answer brief, ASI asserts QT failed to preserve for appellate review a challenge to the sufficiency of the evidence to support the verdict because QT did not move for directed verdict for breach of contract "at the end of its own evidence or at the end of [ASI's] evidence." *Hebble v. Shell W. E & P, Inc.*, 2010 OK CIV APP 61, ¶ 15, 238 P.3d 939, 945 ("In order to preserve a challenge to the sufficiency of the evidence, a party must move for directed verdict at the close of all the evidence and before the issues are submitted to the jury.").

¶ 14 A review of the trial transcript shows QT properly moved for a directed verdict after ASI rested by stating the following: "At this time, Your Honor, [QT] would move for a directed verdict on its claim of breach of contract for the reasons we've previously stated." In response, the trial court found as follows: "Gentlemen, I believe there is sufficient testimony and evidence to send this question on both the breach of contract and the counterclaim to the jury. So [QT's] motion for directed verdict is overruled." Given this record, we conclude the issue was properly preserved for appellate review and proceed to the merits of this issue.

¶ 15 In order to recover in a breach of contract action, QT must prove: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843; *see also* Oklahoma Uniform Jury Instructions (OUJI)—Civil Instruction 23.1.

¶ 16 As to the formation of a contract, QT and ASI do not dispute they were parties to the Asbestos Abatement Contract after the contract had been assigned to QT by Maharishi Ayur–Veda University, Inc., in connection with the sale of the property to QT. It is also not disputed that QT and ASI then entered into the "First Amendment to Asbestos Abatement Contract" which, among other things, enlarged ASI's removal duties and extended the contract completion date from September 1, 2007, to September 21, 2007.

¶ 17 QT alleged ASI breached paragraph 10 of the Contract which states as follows:

The Contractor shall conduct its operations in such a manner that no undue hazard will result due to the requirements of this Section, and the language in this Section shall in no way act as a waiver of any of the terms of the liability of the Contractor or its surety.

According to QT, ASI breached this provision by failing to "conduct its operations in such a manner that no undue hazard will result" which caused QT's damages resulting from the fire. QT points to the testimony it presented at trial from Steve Fulps, vice-president and co-owner of ASI, who testified the debris stacked against the wall was a fire hazard.

¶ 18 In response, ASI also relies on the expanded version of the same testimony by Fulps in which he states that although the debris stacked against the wall created a fire hazard, he believes it was the failure of another contractor, D–T, that created the hazard. Fulps testified as follows:

Q. Okay. And it's your opinion that when this debris stacked up on that cabana roof and was against the wall of the hotel, you believed that was a fire hazard, correct?

A. When it stacked up against the walls?

Q. Yes, sir.

A. Well, it was.

Q. Right. And that was a fire hazard?

A. Yes.

Q. So hazard in the contract, hazard when the debris was up against the building. They were both a hazard, right?

A. Well, the hazard, sir, was by the demo[lition] contractor leaving it there. My responsibility ended when it went out the window. Yes, there was a hazard, but that was created by the demo[lition] contractor leaving it there.

ASI also presented testimony that although ASI was throwing debris out the window,

they received no requests to do it any differently nor complaints they were doing anything improper from anyone including the Oklahoma Department of Labor; the Department of Environmental Quality; Monica Olason, the environmental compliance engineer from QT; or Vernon Ashworth, project manager with Conestoga–Rovers & Associates (CRA) who reported to Monica Olason. CRA is an environmental engineering consulting company hired by QT to go periodically to the Camelot Hotel property site to determine the progress of the asbestos abatement. Ashworth testified he took "field notes" of his observations each day he was at the site and that there was nothing in his notes indicating "that [he] felt that [ASI] was conducting an unsafe work practice on the scene."

¶ 19 In denying QT's motion for directed verdict, the trial court found as follows:

> Gentlemen, I believe there is sufficient testimony and evidence to send this question on both the breach of contract and the counterclaim to the jury. So [QT's] motion for directed verdict is overruled.

Viewing as true "all evidence favorable to [ASI] and all reasonable inferences drawn therefrom, and disregarding all evidence favorable to [QT]," we must affirm the trial court's denial of QT's motion for directed verdict. *Computer Publ'ns, Inc.*, 2002 OK 50 at ¶ 6, 49 P.3d at 735. ASI presented evidence that it had performed its duties under the Contract by removing the debris inside the building and that the fire was not caused by its conduct in doing so, but by D–T's breach of its duty as the demolition contractor to remove the debris from the site once it was outside the building. The trial court correctly concluded that sufficient competent evidence was presented on which the jury could find that ASI did not breach paragraph 10 of the contract or that ASI's conduct was not the cause of QT's damages. We find no error in the trial court's denial of QT's motion for directed verdict.

¶ 20 As to its breach of contract claim, QT argues in its reply brief on appeal that its motion for directed verdict should have been granted because ASI admitted it breached the Contract "by failing to complete the project on time" and "by placing debris in an undesignated area." Because QT raised these issues for the first time in its reply brief, we cannot consider them on appeal. *Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n*, 2007 OK 55, ¶ 33, 164 P.3d 150, 162–63 ("New arguments may not be raised for the first time in a reply brief.").

## II. Jury Instructions

¶ 21 QT argues the trial court erred in instructing the jury as to (1) impossibility of performance of the Contract and (2) modification of the Contract. "The test of reversible error in giving jury instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered had the errors not occurred." *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 25, 154 P.3d 1240, 1248.

¶ 22 According to Oklahoma law, an appellate court will set aside a judgment for misdirection of the jury only if "it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2011 § 3001.1. In reviewing jury instructions, an appellate court must consider the instructions as a whole and evaluate "the accuracy of the statement of law as well as the applicability of the instructions to the issues." *Johnson v. Ford Motor Co.*, 2002 OK 24, ¶ 16, 45 P.3d 86, 92. "Fundamental error occurs when the trial court does not accurately instruct the jury on the law." *Taliaferro*, 2006 OK 96 at ¶ 25, 154 P.3d at 1247–48.

¶ 23 Oklahoma's Uniform Jury Instructions were designed "1) to provide juries with clear concise, uniform, and unbiased instructions to guide their deliberations; and 2) to increase the efficiency of trial counsel and trial courts by eliminating the need to draft and select proposed instructions on commonly encountered subjects." *Thomas v. Gilliam*, 1989 OK 59, ¶ 5, 774 P.2d 462, 464. A trial court is required by law to use the Uniform Instructions "unless the court

determines that [they do] not accurately state the law." 12 O.S.2011 § 577.2.

*Impossibility*

¶ 24 QT contends "ASI may have been temporarily delayed from completing the job because of the fire, but the delay was not of the sort that would discharge ASI beyond the extent of the impossibility, if at all. The fire did not prohibit ASI from completing the job." QT further alleges "[b]ecause the creation of the hazard was both under ASI's control and admittedly foreseeable, the resulting fire could not constitute a supervening impossibility."

¶ 25 QT disputes the trial court's submission of the following instruction to the jury:

A party is relieved from the duty to perform a contract if:

1.  It has become impossible to perform because of an occurrence that was beyond the control of the parties; and

2.  Neither of the parties could reasonably foresee the occurrence when they made the contract.

The instruction given on "impossibility" is identical to OUJI—Civil Instruction 23.36. The Comments section states in relevant part as follows:

Three common grounds for impossibility of performance are 1) the death or incapacity of a particular person who is necessary for performance; 2) the destruction or failure to come into existence of a thing necessary for performance; and 3) the prohibition of performance by a governmental regulation or order.

*Id.* (citations omitted).

¶ 26 During its jury instruction conference with counsel, the trial court found as follows:

The Court: Well, I think the instruction here is that it is impossible to perform. And I guess we really are talking about impossible to perform a term of the contract because of an occurrence that was beyond the control of the parties. It's not the entire contract, but I think there were terms—there is evidence that it was impossible to perform a term of the contract. The problem is this goes to the counter-

claim as opposed, really, to—the counterclaim being the time element.

Mr. Carr: Well, also, Your Honor, Jane [Cowdery] makes a good point. I mean, it's an element of the counterclaim, the instruction that we just used for elements of the claim for breach of contract for [QT], to be failing to complete the project by the completion date. It is an element of their breached claim. I think it's important to both of us.

The Court: You're right. I'm going to give this instruction. I will note [QT's] objection.

¶ 27 QT argues the trial court erred in giving the impossibility instruction because the Contract was not impossible to perform and was, in fact, completed by ASI:

Giving the instruction was reversible error because the jury was misled into believing it could relieve ASI for all liability on [QT's] breach of contract claim since the cont[r]act was *impossible* to complete, while simultaneously entering a verdict in favor of ASI on its counterclaim, on the basis that it had *completed* the contract.

¶ 28 We find no reversible error. We cannot determine from its verdict whether the jury found the Contract to be impossible to perform. Each of the parties argued to the jury that it had performed its contractual duties toward the other and was entitled to relief. Based on the record presented to the jury, it is equally plausible that, without any finding of impossibility, the jury decided that QT failed to prove ASI breached the Contract or found that ASI's breach, if any, did not cause QT's damages. It is unlikely that the jury was misled because, as QT correctly points out, the jury must have concluded that ASI completed the Contract in order to render a verdict in ASI's favor on its counterclaim.

¶ 29 Because there is ample competent evidence of other grounds for the jury's verdict, we find no basis in the record to conclude that the jury was misled by the impossibility instruction "to the extent of rendering a different verdict than it would have rendered had the errors not occurred." *Taliaferro*, 2006 OK 96 at ¶ 25, 154 P.3d at 1248.

¶ 30 We will set aside a judgment for misdirection of the jury only if "it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." 20 O.S.2011 § 3001.1. The record does not support such an opinion, and we decline to reverse the judgment on these grounds.

### Modification of the Contract

¶ 31 As to ASI's counterclaim, QT argues that "because the trial court erred in admitting evidence of contractual modification and instructed the jury on contract modification, the jury was misled and rendered a verdict in favor of ASI on its counterclaim which was not supported by the evidence." QT contends that because the Contract was not modified in writing, the trial court erred in allowing the introduction of evidence concerning the modification and then erred in giving the instruction.

¶ 32 The instruction given by the trial court is identical to OUJI—Civil Instruction 23.9:

The parties to a contract can agree to modify a contract by changing one or more of its terms while continuing to be bound by the rest of the contract.

A modification of a written contract must also be in writing, unless it is shown by clear and convincing evidence that the written contract has been modified by an oral agreement which the party seeking to enforce has already fully performed.

During the jury instruction conference, the trial court stated in regard to this instruction: "Whether there's been a modification or not is going to be up to the jury to decide, but I think there is testimony to indicate there may have been a modification of the contract, so I'm going to include 23.9."

¶ 33 Monica Olason testified as follows regarding an email she sent to Fulps dated October 29, 2007:

Your proposal for the removal of newly asbestos-contaminated material on floors 2 and 3 for $119,830 is approved. We agree that this is a 'not to exceed' amount and if the work is completed quicker than the time frame you've suggested that [QT] will not be charged for the additional time. Based on our discussions, we will now estimate the completion date of the asbestos abatement to be on or around November 30th.

Olason testified that ASI completed the job on November 30, 2007:

Q. But you do recall that my client was done with the job on November 30th?
A. Correct.
Q. The date that you established with him in this e-mail, correct?
A. Correct.
Q. He's not late, is he?
A. Not according to this e-mail.

¶ 34 ASI contends there was both an oral and written modification of the Contract. First, as to execution of an alleged oral contract, the project was completed by ASI. Thereafter, QT paid for the subject work (that of the original contract and its amendment, plus the emergency post-fire work on reconstructing the contamination containment at the agreed $9,500.00 price, plus the $119,000.00 for the additional abatement work after the fire)....

"An oral agreement modifying a written contract, although established, is ineffective to alter the terms of the written contract until its terms have been fully executed." *Dewberry v. Universal C.I.T. Credit Corp.*, 1966 OK 77, ¶ 10, 415 P.2d 978, 979. ASI argues there was clear and convincing proof of a fully executed oral agreement which exists "where the owner verbally altered the contract and the contractor subsequently acts at the owner's direction."

¶ 35 ASI further asserts a written modification of the Contract also occurred verifying "payment for the $9,500.00 for the additional emergency work and the $119,000.00 additional work post-fire, as well as QT's acquiescence in extending the completion date to November 30, 2007." ASI contends that all of this was confirmed in writing by Olason's emails. ASI further argues that QT's Director of Real Estate Rodney Loyd testified that QT asked ASI to perform additional abatement services after the fire and that QT

did so through Olason, who was ASI's main contact.

¶ 36 After review of the record and relevant law, we see no error in the trial court's admission of evidence on the issue of contract modification and conclude that the evidence at trial was sufficient to support giving the modification instruction. It is not reasonably certain that the jury was misled and would have rendered a different verdict nor that the giving of this instruction resulted in a miscarriage of justice or constituted "a substantial violation of a constitutional or statutory right." *Taliaferro*, 2006 OK 96 at ¶ 25, 154 P.3d at 1248; 20 O.S.2011 § 3001.1

### III. Extrinsic Evidence

¶ 37 QT next argues the trial court erred "when it allowed ASI to introduce extrinsic evidence where no judicial determination was made that the contract or any terms of the contract were ambiguous." QT contends the trial court failed to make any determination that the contract provision at issue was ambiguous or unclear: "[ASI] shall conduct its operations in such a manner that no undue hazard will result." QT asserts the trial court erroneously allowed ASI to admit extrinsic evidence regarding D–T's contractual duties: that is, the trial court allowed the introduction of "extrinsic evidence of a nonparty's responsibilities to interpret what ASI's responsibilities were under its contract with [QT]."

¶ 38 "Existence of an ambiguity is a decision to be made by the court." *American Biomedical Grp. v. Norman Reg'l Hosp. Auth.*, 1993 OK CIV APP 83, ¶ 15, 855 P.2d 1074, 1077. "[A] contract term is ambiguous if it can be interpreted as having two or more meanings." *Ahlschlager v. Lawton Sch. Dist.*, 2010 OK 41, ¶ 19, 242 P.3d 509, 515. " 'Where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts and circumstances throwing light on the intention of the parties is admissible.' " *Id.* (quoted citation omitted). "Where the intention of the parties is not clear from the writing, and is shown by parol evidence, a question is then presented for the trier of fact." *American Biomedical*, 1993 OK CIV APP 83 at ¶ 16, 855 P.2d at 1078.

¶ 39 There is nothing ambiguous about ASI's obligations regarding debris removal. It appears from the trial testimony that the parties agreed that, in performing the Contract, ASI could fulfill its duty to remove the debris from the hotel building by throwing it out the windows, a procedure that expedited the removal. The trial court determined that the jury should decide the question of who was then responsible for removing the debris from the site. We conclude ASI's evidence of D–T's contractual duty to remove the debris from the site once it was outside the hotel was not admitted to interpret an ambiguous term in the contract between QT and ASI, but rather as a defense to QT's breach of contract claim—*i.e.*, that ASI did not breach the contract provision in question and/or that it was not any breach by ASI that caused the damages for which QT sought recovery. *See Digital Design Grp., Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843. In his testimony, Fulps stated the following:

Q. Now, ... I guess after [July] the 17th when you began removing property from the building out the windows, and the time of the fire on September 18th, had another contractor, in fact, showed up to at least clear the property on some occasion?

A. Yes, multiple or—

Q. More than once?

A. —some occasions. More than one, yes.

Q. As the debris piled up, they would come and remove it?

A. Yes.

Q. Did your employees at any time ever remove that from the scene?

A. No.

Q. Had you ever been asked to remove it from the scene?

A. No.

Q. Did [QT] ever ask you to remove it from the scene?

A. No.

¶ 40 We conclude the evidence complained of was relevant to support ASI's defense to

QT's breach of contract claim.[2] "Relevant evidence" is statutorily defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." 12 O.S.2011 § 2401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible." 12 O.S.2011 § 2402.

¶ 41 The trial court's decision on the relevance of evidence will be reversed only for abuse of discretion. *Jordan v. Cates*, 1997 OK 9, ¶ 20, 935 P.2d 289, 293. We conclude the trial court's decision to allow the jury to consider this evidence regarding D–T's duty to QT went to the heart of determining whether ASI breached the Contract and whether any such breach directly caused damages to QT. Based on this analysis, there is no abuse of discretion on which to reverse the judgment.

## IV. "Ghost Tortfeasor"

¶ 42 QT next argues trial court error occurred "when it allowed ASI to repeatedly refer to [D–T] throughout the case as a 'ghost tortfeasor.'" QT specifically contends: "By the end of ASI's opening statement, it was clear it intended to excuse its breach of the contract by making [D–T] a 'ghost tortfeasor' as though this were a negligence case. In this way, ASI set the stage to

mislead the jury into believing it could legally be excused from creating an undue hazard (debris pile) by blaming a non-party for not cleaning it up."

¶ 43 We must first point out that, in support of this argument, QT does not cite any place in the record that ASI actually referred to D–T as a "ghost tortfeasor" during the trial. A review of the record further demonstrates the trial court explicitly confined the evidence and the instructions to a breach of contract claim, specifically excluding any reference to negligence:

> This is difficult because we've jumped from this negligence claim now to just breach of contract. But that's where we are, is we're looking at a breach of contract. Let's keep it there knowing where the confinements are.
>
> . . . .
>
> I think we're stuck with contracts, is this ASI's responsibility or not.
>
> . . . .
>
> Did they fulfill their responsibilities under the contract or not. DT is not a part of this. I mean, the burden is on [QT] to prove that there was a breach of this contract and you need to defend this contract. It's [*sic*] only relevance is that that wasn't a responsibility [ASI] had.
>
> . . . .
>
> But it's very narrowly limited there.
>
> . . . .
>
> But I am going to admonish both of you that I think DT is not in this, tread gently

**2.** The trial court seemed uncertain about how to deal with the questions of (1) D–T's contractual duty to QT, and (2) D–T's previous involvement in the case as a third-party defendant who was dismissed before trial. The court attempted to avoid error by not allowing the jury to hear D–T's history in the litigation and why it was no longer in the case. It did, however, allow testimony and argument to the jury by both parties regarding D–T's duty to remove debris from the site, but it refused to allow ASI to introduce the D–T contract or its specific provision which neither party disputed established D–T's responsibility to remove debris from the site.

The trial court found that the D–T contract was "extrinsic evidence" being offered to interpret ASI's contract and sustained QT's objection to its admission. There is nothing vague or uncertain, and thus needing "interpretation," about the de-

bris responsibilities of ASI and D–T as stated in their respective contracts. Rodney Loyd, QT's Director of Real Estate, testified on direct examination that he was not contending that it was ASI's responsibility "to remove the rubble from the ground." Tr., p. 279. As ASI's counsel argued to the trial court in urging the admission of D–T's contract with QT: "The jury needs to be told whose responsibility was whose. We have our contract that defines our responsibilities and they're trying to blame somebody else's responsibility onto my client. I am able to defend myself by saying you had an agreement with another contractor to do the very thing you're blaming us for." Although the trial court incorrectly found D–T's contract to be "extrinsic evidence," the error in excluding this document favors QT and does not mandate reversal.

there.[3] I just don't know where we're going to go with that other than the fact that I think you need to defend this contract, Mr. Carr, and you need to focus on this contract, Mr. Steele and Mr. Lehman, and this is not a negligence case so causation is not an issue.[4]

¶ 44 We do not find and QT does not refer us to any place in the record where the trial court allowed ASI to pursue negligence of a non-party as a defense or a theory of recovery, or allowed ASI to present such an argument to the jury. The trial court clearly set forth to counsel in bench conferences and to the jury in its instructions that the only claims to be decided by the jury on QT's petition and ASI's counterclaim were the parties' respective breach of contract claims. As noted in the previous section, evidence regarding who was contractually responsible for removing the debris from the hotel site was probative and relevant to the factual questions at the heart of the breach of contract issues, and we see nothing in the record on this issue on which to conclude the trial court abused its discretion.

## CONCLUSION

¶ 45 Having found no reversible error at trial, we affirm the trial court's rulings.

¶ 46 **AFFIRMED.**

FISCHER, C.J., and BARNES, P.J., concur.

---

3. *See* n. 1 *supra.*

4. It is not clear what "causation" the trial court is referring to. In earlier colloquy with counsel, the trial court indicated that causation *of the fire* was not an issue in the case. However, although negligence as a cause of QT's damages was not an issue for the jury's consideration, the question of "causation," *i.e.,* whether QT's damages were "a direct result" of ASI's alleged breach of contract, was clearly an issue for the jury to decide if it found ASI in breach of its contractual duties to QT. Trial court's Instruction No. 10 to the jury, R. at p. 230 (based on Oklahoma Uniform Civil Jury Instruction Number 23.1).